Clifford Jearold NESSEIM and Mary Lou Nesseim, Plaintiffs,

v.

MAIL HANDLERS BENEFIT PLAN, Defendant.

No. Civ. 92–1010.

United States District Court, D. South Dakota, N.D.

April 3, 1992.

Monte R. Walz, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for plaintiffs.

Frank Petramalo, Jr., Gordon & Barnett, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BATTEY, District Judge.

### NATURE AND PROCEDURAL HISTORY

This matter comes before the Court on a complaint for preliminary injunction, expedited trial, and declaratory judgment. The complaint was filed March 13, 1992. Plaintiffs Clifford Jearold Nesseim and Mary Lou Nesseim are insureds under a health benefits plan issued by defendant Mail Handlers Benefit Plan (MHBP), a plan authorized by the Federal Employees Health Benefits Act (FEBH), 5 U.S.C. §§ 8901–8913. The complaint for injunctive and declaratory relief requests a pre-certification under the health benefits plan for high dose chemotherapy accompanied by autologous bone marrow transplant (HDCT–ABMT) for Mary Lou Nesseim because of the onset of her having metastatic breast cancer which has spread to the lymph nodes.

By agreement of counsel, a hearing on the preliminary injunction was waived and the parties agreed to submit the matter to the Court in the form of cross motions for summary judgment under Fed.R.Civ.P. 56. The Court issued a briefing schedule, to which the parties have promptly responded. The Court heard oral argument on April 3,

1992, and the matter is now ready for the Court's resolution. The Court has examined all matters submitted, including affidavits, verified complaint, and memorandum briefs of each party.

The Court compliments the attorneys for both parties for their prompt and expeditious responses which enable this matter to be brought before the Court consistent with the serious, impending medical needs of Mary Lou Nesseim.

## FINDINGS OF FACT

1. Plaintiff Clifford Jearold Nesseim is a federal employee employed by the Internal Revenue Service. Both he and his wife, Mary Lou Nesseim, reside in Aberdeen, South Dakota.

2. Plaintiffs are insureds under a health benefits plan authorized by the Federal Employees Health Benefits (FEHB) Act, 5 U.S.C. §§ 8901–8913.

3. The Court has jurisdiction of this case pursuant to the FEHB Act and 28 U.S.C. § 1332 in that diversity jurisdiction exists between the parties. The principal place of business of defendant is Rockville, Maryland, and is deemed to be a Maryland citizen for diversity purposes. The National Postal Mail Handlers Union, a division of LIUNA, AFL–CIO, has entered into Contract No. 1146 with the Office of Personnel Management (OPM) to provide a health benefits plan pursuant to the Federal Employees Health Benefits Act. This plan is known as the "Mail Handlers Benefit Plan (MHBP)," and is underwritten by the Continental Assurance Company of Chicago, Illinois, under Agreement No. L–35489. MHBP is one of many similar type of health benefit plans which is managed by OPM.

4. Plaintiffs, as enrolled in the MHBP, is entitled to such health care benefits, for both of them to which they be entitled under the terms and conditions of the health benefit plan.

5. On October 22, 1991, Mary Lou Nesseim was diagnosed as having advanced metastatic breast cancer which has spread to the lymph nodes. Her physician and oncologist has admitted a treatment program of standard chemotherapy. This standard chemotherapy has failed to eliminate the cancer. Based upon the recommendation of Mary Lou Nesseim's physicians, it is recommended that she undergo a treatment known as high dose chemotherapy, accompanied by autologous bone marrow transplant (HDCT–ABMT).

6. The Court finds that HDCT–ABMT is an expensive medical procedure. The procedure requires an in-hospital commitment, at which time the patient's bone marrow is "harvested" from the patient and preserved so that the patient is able to receive vastly increased doses of chemotherapy and radiation therapy which would otherwise destroy the bone marrow and cause the patient's death. Once the treatment is completed, the patient's bone marrow is then reintroduced into the patient. Because of the expensive nature of the procedure, it is required to receive a pre-certification by the patient's health carrier to the effect that such treatment is covered by the terms of the insurance under the health benefit plan.

7. The Court finds that HDCT–ABMT is a logical extension of conventional chemotherapy treatment for cancer, including breast cancer, and has been accepted by the medical community and the courts as constituting a generally accepted medical treatment for breast cancer which cannot be cured through the smaller doses of standard chemotherapy.

8. By letter dated December 20, 1991, plaintiffs requested that the plan grant the pre-certification required in order to permit the administering of the HDCT–ABMT treatment.

9. On January 8, 1992, MHBP notified plaintiffs that the request for pre-certification under the plan had been denied based upon the defendant's interpretation of the plan agreement which it was claimed excluded coverage for HDCT–ABMT. (Exhibit 1).

10. The notification by MHBP as to the reasons for the denial of coverage were stated in its letter of January 8, 1992, in part as follows:

I direct your attention to page 16 of the 1992 MHBP brochure (a copy of which is attached) which describes the Plan's "Bone Marrow Transplants" coverage. It states in pertinent part as follows:

Benefits for autologous bone marrow transplants are limited to patients with acute leukemia in remission, resistant non-Hodgkins lymphomas, resistant or recurrent neuroblastoma.

Breast cancer patients fall outside this coverage list. You also will note that on page 17 of the brochure states the Plan excludes "any transplant not listed as covered." Furthermore, on page 11 under the heading "General Exclusions," the brochure states that When services or supplies have been excluded under a single benefit category, all charges associated with such services or supplies, otherwise shown as covered under other benefit categories, are also excluded.

Based on this provision, the Plan excludes any high dosage chemotherapy charges associated with a non-covered autologous bone marrow transplant. In sum, charges for autologous bone marrow transplant with high dosage chemotherapy plainly are excluded from MHBP coverage in 1992. (For your information, identical provisions were included in the 1991 MHBP brochure which applies to charges incurred in that year).

11. On January 21, 1992, plaintiffs appealed the plan's decision to OPM. The appeal was pursuant to 5 C.F.R. § 890.105 requesting reconsideration of the denial by MHBP based upon four grounds:

1. The proposed treatment was part and parcel of Mrs. Nesseim's chemotherapy, which is covered by the policy;

2. The Mail Handlers policy language concerning chemotherapy and the purported exclusion of high dose chemotherapy with autologous bone marrow transplant was ambiguous, and as such, should be construed in favor of the insured;

3. A reasonable person reviewing the policy would reasonably expect coverage for all forms of chemotherapy treatment and would not be alerted to the purported exclusion which is in a different part of the policy dealing with organ transplants and uses undefined medical and technical terms; and

4. On basic equity it would be unconscionable to deny Mrs. Nesseim life-saving treatment.

12. On February 27, 1992, OPM notified plaintiffs that their appeal was denied. (Exhibit 2). OPM, in its decision to deny plaintiffs' appeal, adopted the interpretation of MHBP in its letter of January 8, 1992. OMP's letter stated in part:

[T]he Mail Handlers 1992 brochure (i.e., their contract with OPM) is unequivocal: "Benefits for autologous bone marrow transplants are limited to patients with acute leukemia in remission, resistant non-Hodgkins lymphomas, resistant or recurrent neuroblastoma, or advanced Hodgkins disease." Breast cancer patients fall outside this coverage list. You also will note that on page 17 the brochure states that the Plan excludes "any transplant not listed as covered." Furthermore, on page 11 under the heading "General Exclusions," the brochure states that "When services or supplies have been excluded under a single benefit category, all charges associated with such services or supplies, otherwise shown as covered under other benefit categories, are also excluded."

13. The Court finds that in 1990 and in years prior thereto, the plan's provisions for bone marrow transplant were different from those listed in the 1992 contractual statements of the 1992 plan. Thus, the 1992 plan represented a change in the plan benefits drafted by MHBP and approved by OPM.

The Court has not addressed other matters contained in the respective statement of facts by the parties for the reason that the Court finds them not material to the consideration of the issues in this case.

## DISCUSSION

### A. Jurisdiction

The complaint alleges jurisdiction under 5 U.S.C. § 8901 et seq. and diversity jurisdiction.

Defendant disputes diversity jurisdiction, but advances no authority with respect to its position. In any event, the Court does have jurisdiction under 5 U.S.C. § 8912.[1] Plaintiff also is entitled to pursue the action under 5 C.F.R. § 890.107.[2]

### B. *Standard of Review*

Defendant urges the Court to adopt the standard of review set forth in 5 U.S.C. § 706(2)(A).[3] It is plaintiffs' position that the standard of review under 5 U.S.C. § 706 does not apply because plaintiffs' argument is based upon construction and interpretation of the benefit plan—a contract document—which this Court is empowered to review without giving deference to OPM's interpretation. Plaintiffs thus urge the Court to apply a de novo review to the decision of OPM that the contract in question does not provide coverage for HDCT–ABMT. This Court finds that under either standard, plaintiffs' summary judgment motion is granted.

■ In examining the posture of this case, and specifically the letter from Mail Handlers dated January 8, 1992, and the letter from OPM which concurred in the decision of Mail Handlers Benefit Plan, the Court notes that OPM did nothing more than simply affirm Mail Handlers Benefit Plan's interpretation of the contract. No independent agency review was made. There is no proof whatsoever of an independent agency review which, if completed, would be reviewed by this Court under the arbitrary, capricious, or in violation of law

standard of 5 U.S.C. § 706(2)(A). The facts indicate that OPM did nothing more than confirm the defendant's interpretation of its own policy.

This case is not one necessarily challenging the legality of OPM's decision. The dispute is with the plan carrier, Mail Handlers Benefit Plan, which is not an administrative agency. Thus, while OPM's agency decisions are tested under 5 U.S.C. § 706(2)(A), this Court does not believe that the decisions of the plan carrier are entitled to the same due deferences afforded government agencies. This Court's conclusion in that respect is not without precedent. *See, e.g., Montz v. Federal Employees Health Management, Blue Cross, Blue Shield & Service Benefit Plan,* Civ. 90–4647 (E.D.La.) (unreported), 1992 Westlaw 46394. This case appears to be one of first impression in this circuit. The Court believes that the "rubber stamp" decision of OPM dated February 27, 1992, on what was essentially the Mail Handlers Benefit Plan's own interpretation should not be dealt with due deference under section 706(2)(A). It appears to this Court that the determination of the meaning of contract terms, including the broad responsibility for interpretation of contracts is best suited to be resolved by a court. *See, e.g., Maloley v. R.J. O'Brien & Assoc., Inc.,* 819 F.2d 1435, 1441 (8th Cir.1987) (proper to consider a standard which turns on practical policy considerations of the comparative qualifications of courts and agencies); *First Nat'l Bank in Sioux Falls v. Na-*

---

1. Jurisdiction of courts. The district courts of the United States have original jurisdiction ... of a civil action or a claim against the United States founded on this chapter....

2. Section 890.107 ... an action to recover on a claim for health benefits should be brought against the carrier of the health benefits plan. An action to review the legality of OPM's regulations under this part or of a decision made by OMP [sic] should be brought against the Office of Personnel Management, Washington, D.C. 20415. However, an enrollee's dispute of an OPM decision solely because it concurs in a health plan carrier's denial of a claim is not a challenge to the legality of OPM's decision. Therefore, any subsequent litigation to recover on the claim should be brought against the carrier, not against OPM.

3. The standard applying for the review of agency decisions made under the Administrative Procedures Act. Section 706, scope of review. To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

   (1) ...
   (2) Hold unlawful and set aside agency action, findings, and conclusions found to be—
    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

*tional Bank of South Dakota,* 667 F.2d 708 (8th Cir.1981). The challenge in this case is not a challenge to the legality of OPM's decision, but to the health plan carrier's denial of a claim based upon its own interpretation of its liability. When Congress enacted the Federal Employees Health Benefit Program, this Court doubts that it intended that the health carrier's interpretation of its own contract should be entitled to the same deference that an agency decision would be given in the interpretation of its own regulations.

Alternatively, this Court need not divine what would be the Eighth Circuit rule under this de novo review analysis since the Court finds that under 5 U.S.C. § 706(2)(A), the actions of the OPM were arbitrary, capricious, and contrary to law. The preemptory response by OPM of February 27, 1992, adopting what this Court finds to be an invalid interpretation of the contract constitutes a violation of the heightened standard set forth in section 706(2)(A).

### C. Contract Provisions

■ Exhibit 3 contains photocopies of portions of the 1992 Mail Handlers Benefit Plan (with certain statements highlighted). This plan is identical to the 1991 plan. The contentions of the parties center around pages 11 (General Exclusions); page 16 (Surgical Benefits—Organ transplants, bone marrow transplants); page 17 (what is not covered) and page 21 (other medical benefits—chemotherapy, x-ray, or radium treatment).

The inclusion of the photocopy is provided in order to permit the examination of the structure of the contract. The structure of the contract itself provides insight into this Court's decision that the terms are ambiguous. The Court finds that the structure is calculated to confuse and mis-

lead. It would have been simple to provide a statement in the contract such as "High dose chemotherapy with bone marrow transplant is not covered." While the Court is mindful of the rule that the complete contract must be examined for thorough analysis, nonetheless a reasonable person—indeed a sophisticated person— would readily conclude that under the Other Medical Benefits, coverage for chemotherapy included at page 21 would cover both low dose and high dose chemotherapy with its concomitant allogenic or autologous bone marrow transplant. In the real world of medicine, high dose chemotherapy and autologous bone marrow transplant cannot exist one without the other in the treatment of cancer patients.

■ Defendant urges that chemotherapy treatment provided on page 21 is taken away on pages 16 and 17 under the Surgical Benefits section of the policy. Examining the structure of pages 16 and 17, bone marrow transplants are defined under the major heading of Organ Transplants/Donor Expenses. Thus, even a careful reading of the bone marrow exclusionary language would be thought to refer to organ transplants. In the ordinary sense, autologous bone marrow transplants reasonably would not be thought of as an "organ transplant."

The contract is ambiguous. As such, it is to be construed against the defendant.

Having thus concluded that summary judgment for plaintiff is warranted under this decision, the Court need not address the other issues raised by plaintiff.

An order granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment will be filed separately.

EXHIBIT 1

# The Mail Handler Benefit Plan

P.O. Box 6222
Rockville, MD 20849-6222

January 8, 1992

Monte R. Walz, Esq.
Davenport, Evans, Hurwitz & Smith
513 South Main Avenue
P.O. Box 1030
Sioux Falls, SD 57101-1030

RE:  Mary Lou Nesseim, SP
     ID#:  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

Dear Mr. Walz:

I am writing to confirm our telephone conversation of December 30, 1991 wherein I advised that the Mail Handlers Benefit Plan ("Plan") does not offer coverage for autologous bone marrow transplant and associated high dosage chemotherapy for the treatment of breast cancer.  Accordingly for reasons detailed below the Plan cannot approve coverage of the charges to be incurred by Ms. Nesseim for such treatment.

As I explained, the Plan is a Federal Employees Health Benefit (FEHB) plan established pursuant to a federal procurement contract between the Mail Handlers Union and the U.S. Office of Personnel Management ("OPM").  The FEHB Act, 5 U.S.C.A. Section 8901-8913 provides for voluntary nationwide health benefits plan for federal employees.  Federal law governs claims for relief that relate to benefits under the Plan.  As a FEHB plan, the Plan may pay only those benefits stated in the contract statement of benefits ("brochure") which OPM publishes and distributes to Plan members.  The brochure describes the benefits, exclusions, limitations and maximums of the Plan.

I direct your attention to page 16 of the 1992 MHBP brochure (a copy of which is attached) which describes the Plan's "Bone Marrow Transplants" coverage.  It states in pertinent part as follows:

> Benefits for autologous bone marrow transplants are limited to patients with acute leukemia in remission, resistant non-Hodgkins lymphomas, resistant or recurrent neuroblastoma.

Breast cancer patients fall outside this coverage list.  You also will note that on page 17 the brochure states the Plan excludes "any transplant not listed as covered".  Furthermore, on page 11 under the heading "General Exclusions," the brochure states that

January 6, 1992
Page Two

When services or supplies have been excluded under a single benefit category, all charges associated with such services or supplies, otherwise shown as covered under other benefit categories, are also excluded.

Based on this provision, the Plan excludes any high dosage chemotherapy charges associated with a non-covered autologous bone marrow transplant. In sum, charges for autologous bone marrow transplant with high dosage chemotherapy plainly are excluded from MHBP coverage in 1992. (For your information, identical provisions were included in the 1991 MHBP brochure which applied to charges incurred in that year).

If your clients are dissatisfied with this response and wish to pursue this matter further, they, acting either directly or through you, may request within ninety (90) days to the date of this letter, pursuant to 5 C.F.R. Section 890.105, that OPM review this Plan decision on reconsideration of this proposed claim. Should OPM find that this decision is inconsistent with the brochure, OPM will require the Plan to pay the claims in the amount which OPM determines to be correct, 5 U.S.C. Section 8902(j). Any such appeal to OPM should be addressed:

> Office of Personnel Management
> Insurance Review Division
> Retirement and Insurance Group
> P.O. Box 436
> Washington, D.C. 20044

A complete discussion of the disputed claims review process may be found on page 27 of the 1991 Plan brochure.

Judicial review of the OPM's decision is governed by the Administrative Procedure Act (APA), 5 U.S.C. Section 706. Please note that no judicial action may be brought against the Plan until the OPM-created dispute resolution process set forth at 5 C.F.R. Section 890.105 has been exhausted. Bateman v. Blue Cross-Blue Shield of Alabama, 579 F.Supp 265, 267 (M.D. Ala. 1984); 51 Fed. Reg. 18,562, 18,563 (May 21, 1986). Damages recoverable under federal law are limited to the amount of contract benefits in dispute plus simple interest and court costs.

If you have any further questions, please don't hesitate to contact me.

Very truly yours,

Mary Beth Lynch, Esq.
Manager, Contract Administration

## EXHIBIT 2

United States
## Office of
## Personnel Management

Washington, D.C. 20415-0001
RIA

In Reply Refer To·                              Your Reference

Mr. Monte R. Walz                                      FEB 27 1992
Davenport, Evans, Hurwitz & Smith
513 South Main Avenue
P.O. Box 1030
Sioux Falls, South Dakota   571-1030

Dear Mr. Walz:

This is in response to your recent appeal on behalf of Mary·Lou Nesseim,
spouse of Mail Handlers Benefit Plan enrollee Jerry Nesseim.

We have considered the points raised in your letter and appreciate the
part played by the bone marrow support procedure in Mrs. Nesseim's
treatment.   Nonetheless, the Mail Handlers 1992 brochure (i.e., their
contract with OPM) is unequivocal: "Benefits for autologous bone marrow
transplants are limited to patients with acute leukemia in remission,
resistant non-Hodgkins lymphomas, resistant or recurrent neuroblastoma,
or advanced Hodgkins disease."  Breast cancer patients fall outside this
coverage list.  You also will note that on page 17 the brochure states
that the Plan excludes "any transplant not listed as covered."
Furthermore, on page 11 under the heading "General Exclusions," the
brochure states that "When services or supplies have been excluded under
a single benefit category, all charges associated with such services or
supplies, otherwise shown as covered under other benefit categories, are
also excluded."

We regret that our response cannot be a favorable one.  However, we have
no contractual basis to compel the Plan to provide benefits.

                    Sincerely yours,

                    Kenneth A. Lease, Chief
                    Health Benefits and Contracts Division I
                    Office of Insurance Programs

CON 114-24-3
Jan 1991

682

EXHIBIT 3

# Mail Handlers Benefit Plan

A Fee-for-Service Employee Organization Plan
Sponsored by: The National Postal Mail
Handlers Union, a Division of LIUNA, AFL-CIO

# 1992

This brochure is the official statement of benefits available to FEHB members and is the sole document you should rely upon. However, the benefits shown on page 30 are non-FEHB benefits and are not part of the FEHB contract and are not offered or guaranteed under the FEHB contract.

**Who may enroll in this Plan:**
All Federal employees and annuitants who are eligible to enroll in the Federal Employees Health Benefits Program and who are, or become, members or associate members of the National Postal Mail Handlers Union, a Division of LIUNA, AFL-CIO.

**To become an associate member:**
You may become an associate member by enrolling in this Plan.

Annuitants (retirees) may enroll in this Plan as associate members.

---

### ATTENTION
### ALL ENROLLEES
All fee-for-service plans in the FEHB Program require pre-certification of each hospital admission and reduce benefits by $500 if you fail to obtain it. Look for details inside!

---

**Membership Dues:**
No charge for members of the National Postal Mail Handlers Union, a Division of LIUNA, AFL-CIO;
$30 per associate membership per year. New associate members will be billed for annual dues when the Plan receives notice of enrollment. Continuing associate members will be billed by the Mail Handlers Union for the annual membership.

| Type of Enrollment | Enrollment Code | Biweekly Premium | | Monthly Premium | | Postal Biweekly | |
|---|---|---|---|---|---|---|---|
| | | Gov't Share | Your Share | Gov't Share | Your Share | Gov't Share | Your Share |
| High Option Self Only | 451 | $ 48.38 | $16.12 | $104.81 | $34.94 | $ 60 47 | $4.03 |
| Self and Family | 452 | $107.83 | $35.94 | $233.63 | $77.87 | $134.78 | $8.99 |
| Standard Option Self Only | 454 | $ 36 92 | $12.31 | $ 80.00 | $26.67 | $ 46.15 | $3.08 |
| Self and Family | 455 | $ 80.16 | $26.72 | $173 68 | $57.89 | $100.20 | $6.68 |

Federal Employees
Health Benefits Program

Authorized for Distribution by the
United States Office of
Personnel Management

These rates do not apply to all enrollees. If you are in a special enrollment category, please refer to your special Enrollment Information Guide and Plan Comparison Chart or contact the agency that maintains your health benefits enrollment.

---

*As Revised January 1992 • See Back Cover for Summary of Benefits*

RI 71-07

# General Exclusions

These exclusions apply to more than one or to all benefits categories. Exclusions that are primarily identified with a single benefit category are listed along with that benefit category, but may apply to other categories. Therefore, please refer to the specific benefit sections to assure that you are aware of all-benefit exclusions. When services or supplies have been excluded under a single benefit category, all charges associated with such services or supplies, otherwise shown as covered under other benefit categories, are also excluded (*e.g.*, Inpatient Hospital Benefits are not payable for non-covered cosmetic surgery).

Benefits are provided only for services and supplies that are medically necessary (see Definitions). The Plan reserves the right to determine medical necessity. The fact that a covered provider has prescribed, recommended, or approved a service or supply does not, in itself, make it medically necessary.

**Benefits are not provided for services and supplies:**

- For which no charge would be made if the enrollee had no health insurance coverage
- Furnished or billed by a provider or facility barred from the FEHB Program.
- Furnished without charge, or paid for directly or indirectly by a local, State, or Federal government agency (except Medicaid or a Veterans Administration facility or a facility of the Department of Defense or the Indian Health Service), or while in active military service; or required for illness or injury sustained on or after the effective date of enrollment (1) as a result of an act of war within the United States, its territories, or possessions or (2) during combat.
- Furnished by household members or immediate relatives such as spouse, parents, grandparents, children, brothers, or sisters by blood, marriage, or adoption.
- Required as the result of occupational disease or injury for which any medical benefits are payable under workers' compensation (under section 8103 of Title 5, U.S. Code) or similar laws, regardless of whether or not medical benefits have been applied for or paid under workers' compensation or similar provisions. It also applies when a third party injury settlement or other similar proceeding/provides medical benefits in regard to a claim (or potential claim) under workers' compensation or similar laws. If medical benefits provided under such laws are exhausted, medical benefits may be provided for services or supplies covered by this Plan.
- That are not medically necessary for the treatment or diagnosis of illness, injury, maternity or bodily malfunction.
- That are investigational or experimental or are mainly for research purposes.

**Benefits are not provided for:**

- Any portion of a provider's fee or charge that is ordinarily due from the enrollee but has been waived. If a provider routinely waives (does not require the enrollee to pay) a deductible or coinsurance, the Plan will calculate the actual provider fee or charge by reducing the fee or charge by the amount waived.
- Charges that the enrollee has no legal obligation to pay, such as physician charges exceeding the amount specified by HHS when benefits are payable under Medicare (see page 29), or excess inpatient hospital charges for a participating Medicare hospital when the inpatient hospital charges are for a retiree age 65 or older who is not covered by Medicare Part A (see page 10).
- Weight control or treatment of obesity, except surgery for documented morbid obesity.
- Outpatient nutritional supplies
- Expenses incurred while not covered by this Plan
- Educational, recreational, or milieu therapy, whether in or out of the hospital
- Biofeedback
- Acupuncture
- Sex transformations; diagnosis or treatment of sexual dysfunctions/inadequacies; penile prostheses
- Eyeglasses, contact lenses and hearing aids, except as provided under Additional Benefits
- Orthotics and other appliances used to treat temporomandibular joint dysfunction
- Cardiac rehabilitation
- Custodial care (see Definitions) or domiciliary care
- Care in a skilled nursing facility or any other non-covered facility
- Outpatient medical supplies such as syringes, needles, bandages, and colostomy bags, except as covered under the Prescription Drug Program (page 23)
- Services and supplies not listed as covered in this brochure
- Travel, even if prescribed by a doctor, except as provided under the Ambulance Benefit (see page 23)
- Administrative or late charges, including interest, billed by providers of care
- Services that are not provided in accordance with generally accepted professional medical standards in the United States

## · Surgical Benefits Con..ued

**Anesthesia**

The professional fee for administration of anesthetics is paid up to 33 1/3 percent of the maximum allowance for the surgical procedure performed by the primary surgeon or $75, whichever is greater.

**Assistant Surgeon**

When the services of an assistant surgeon are required by the primary surgeon, an additional allowance of up to 20% of the amount allowed for the primary surgeon will be paid.

**Oral Surgery**

The following procedures are covered:

- Reduction of fractures of the jaws or facial bones
- Removal of impacted teeth that are not completely erupted (bony, partial bony and soft tissue impactions)
- Surgical correction of cleft lip, cleft palate, or protruding mandible
- Removal of stones from salivary ducts
- Excision of tori, leukoplakia, or malignancies
- Temporomandibular joint dysfunction surgery
- Other surgical procedures that do not involve the teeth or their supporting structures.

Note: Procedures that involve the teeth or their supporting structures, such as periodontal membrane, gingiva, and alveolar bone, are not considered covered oral surgery. These procedures may be considered as covered dental procedures under the **High Option Dental Benefits.** There is no coverage for dental implants. (See pages 24-25).

**Organ Transplants/
Donor Expenses**

Benefits will be provided the same as for any other illness or injury for covered expenses incurred for surgical transplant of a body organ (as defined below). This benefit applies only if the recipient is covered by this Plan. Related donor medical and hospital expenses are covered to the extent the donor's expenses are not covered by another plan or policy.

Surgical transplant of a body organ means transfer of a body organ(s) from the donor to the recipient (allogenic) or a bone marrow graft in which the donor and recipient are the same person (autologous).

For purposes of this Plan, body organ means only the following:

(1) kidney
(2) heart
(3) heart/lung
(4) liver
(5) pancreas (when the condition is not treatable by use of insulin therapy)
(6) bone marrow (see below)
(7) cornea
(8) single lung and double lung (when transplant is performed in approved center)

Donor means a person who undergoes a surgical operation for the purpose of donating a body organ(s) for transplant surgery.

The maximum benefit for any organ transplant(s) is $300,000. Included in the $300,000 maximum are hospital, surgical, and medical expenses of the recipient but not the covered expenses of the donor. The cost of outpatient prescription drugs related to the transplant is not subject to the $300,000 limit.

**Bone Marrow
Transplants**

Benefits for allogenic bone marrow transplants are limited to patients with leukemia, aplastic anemia, severe combined immuno-deficiency disease, Wiscott-Aldrich syndrome, or advanced Hodgkins disease.

Benefits for autologous bone marrow transplants are limited to patients with acute leukemia in remission, resistant non-Hodgkins lymphomas, resistant or recurrent neuroblastoma, or advanced Hodgkins disease.

**Pre-Surgical
Testing**

Inpatient surgery—The Plan pays actual charges for diagnostic X-ray and laboratory services and supplies recognized as part of the hospital admission procedure preparatory to surgery covered under the Plan. Pre-surgical testing is covered only when provided on an outpatient basis within 10 days prior to admission as an inpatient for such surgery.

Outpatient surgery—When a covered surgical procedure is performed in an outpatient setting, the Plan pays actual charges for laboratory tests, pathology, radiology and X-rays directly related to the surgery when performed within 10 days prior to the surgery (including the day of surgery).

## Surgical Benefits *Continued*

**Second Opinion Surgical Consultation**

The Plan pays actual charges up to $70 under High Option, and $65 under Standard Option, per surgical consultation, for two consultations by a doctor other than the surgeon.

## Related Benefit

**Eyeglasses/Lenses**

Eyeglasses or contact lenses to correct an impairment directly caused by an accidental injury or covered intraocular surgery are covered as Additional Benefits on page 23.

## Limited Benefits

**Cosmetic Surgery**

Cosmetic Surgery (see Definitions) and all services related thereto is limited to surgery necessary to correct a congenital anomaly of a child born to a member while enrolled in this Plan, for repair following accidental injury if repair is initiated within two years after the accident and if the accident occurs and treatment is rendered while covered by the Plan. For breast reconstructions following a mastectomy, the initial reconstruction implant must be within five years of the mastectomy. Patient may have replacement prosthesis.

**Concurrent Physicians' Inhospital Care**

If you receive inhospital physician care from another physician for a condition not related to the surgery performed, you are entitled to both Surgical Benefits and, for the other condition, the Inhospital Doctors' Visit benefit (see Other Medical Benefits). However, if you are admitted to the hospital for a medical condition and are then transferred to the hospital's surgical service for the same condition but under the care of another physician, you are entitled to Inhospital Doctors' Visit benefits only from the date of admission to the date of transfer to the surgical service. Thereafter, you are entitled only to the Surgical Benefits. If both surgery and inhospital physician care are rendered by one physician, you are entitled to whichever benefit is greater.

If you receive concurrent inhospital physician care from more than one physician during the same admission (whether or not it is for the same condition), you are entitled to benefits for the services of only the attending physician.

**What Is Not Covered**

- Removal of corns or calluses or trimming of nails
- Eye surgery, such as radial keratotomy, when the primary purpose is to correct myopia (near-sightedness), hyperopia (farsightedness), or astigmatism (blurring)
- Sterilization reversals
- Services of a stand-by surgeon
- Any transplant not listed as covered

## Other Medical Benefits Continued

**Hospital Outpatient Care**

The Plan pays for the following when charges, as shown below, are incurred in lieu of hospital admission and when billed by the outpatient department of a hospital or an out-of-hospital facility such as a medical-, cancer-, dialysis-, or surgi-center or clinic. (This benefit does not apply to related professional fees.)

- Services and supplies provided on the day of surgery and in connection with surgery, for other than the surgical procedure—100% of actual charges.
- Services and supplies, including drugs ordered by a doctor and supplied or administered by the hospital or doctor, for chemotherapy and radiation therapy for the treatment of cancer—75% of actual charges.
- Services and supplies for hemodialysis and peritoneal dialysis, including coverage for services and supplies related to home dialysis—75% of actual charges.

**Emergency Treatment**

High Option and Standard Option pay the following:

For Accidental Injury—The Plan pays 75% of actual charges for covered services and supplies furnished to an outpatient in connection with emergency treatment or surgery performed within 72 hours of an accident. This benefit is payable instead of any other benefit under the Plan.

For Illness—After a $50 deductible per visit, the Plan pays 75% of actual charges for covered services and supplies furnished to an outpatient in connection with initial emergency treatment of illness or surgery performed within 72 hours of the onset of the illness. Services must be rendered in a hospital emergency room or urgent care center. Charges for either initial or follow-up treatment rendered in a doctor's office will be paid under the Doctors' Visit Out-of-Hospital benefit. This benefit is payable instead of any other benefit under the Plan.

**Diagnostic Procedures**

For diagnostic X-ray, laboratory procedures, and machine diagnostic tests related to a covered illness or injury (except for conditions listed on page 11 and below), benefits will be paid at 75% of the reasonable and customary charge for High Option and at 70% of the reasonable and customary charge for Standard Option.

**Chemotherapy, X-ray or Radium Treatment**

The Plan pays 75% of actual charges for doctors' outpatient services, laboratory and X-ray services rendered for chemotherapy, X-ray or radium treatment for treatment of cancer, and for prescription drugs for chemotherapy ordered by a doctor and billed by a doctor, hospital or pharmacy for treatment of cancer (also see Hospital Outpatient Care above). This benefit is payable instead of any other benefit under this Plan.

**Hemodialysis, Peritoneal Dialysis**

The Plan pays 75% of actual charges for doctors' outpatient services, laboratory and X-ray services rendered for hemodialysis and peritoneal dialysis (also see Hospital Outpatient Care above). Included in this benefit are services and supplies related to home dialysis. This benefit is payable instead of any other benefit under this Plan.

**Nursing Care Services**

The Plan pays up to $50 per 8-hour shift, after a $50 deductible per person per calendar year, for the services of a registered graduate nurse (R.N.) or the services of a licensed practical nurse (L.P.N.), if recommended by a doctor. For less than an 8-hour shift, the Plan will pay benefits on a pro-rata basis.

**Durable Medical Equipment**

The Plan pays actual charges, after a $50 deductible per item, for the rental (or purchase, at the Plan's option, if less expensive), of Durable Medical Equipment (see Definitions) when recommended by a doctor. The Plan will also pay for necessary repair or adjustments to purchased equipment.

**Prosthetic Appliances**

The Plan pays actual charges, after a $50 deductible per item, for a Prosthetic Appliance (see Definitions) when recommended by a doctor.

**Rabies Shots**

The Plan pays in full for rabies shots and related services.