Carolyn ARRINGTON, Plaintiff,

v.

GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., t/a Blue Cross/Blue Shield of The National Capital Area, Defendant.

Civ. A. No. 92-2531.

United States District Court, District of Columbia.

Nov. 20, 1992.

John A. Ritchie, Washington, D.C., Richard D. Carter, Alexandria, Va., for plaintiff.

Charles J. Steele, Mary Atchley Jester, Terry Bancroft Dowd, Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

This is a contract claim by a government employee, Carolyn Arrington, who has been denied insurance benefits for a particular cancer treatment that she claims is covered under the Blue Cross/Blue Shield 1992 Government-wide Service Benefit Plan of the Federal Employee Health Benefits ("FEHB") programs. *See* 5 U.S.C. § 8903. The action comes before the Court on cross-motions for summary judgment which have been filed, briefed, and argued on an expedited schedule in view of the plaintiff's serious imminent health hazard.[1] There are no material facts in dispute. The Court has jurisdiction under 28 U.S.C. § 1331.

## I. FACTUAL BACKGROUND

Plaintiff is under the care of an oncologist, recovering from a mastectomy. Since the cancer appears to have moved to the chest and lung area and continues to progress, her physician has strongly recommended high-dose chemotherapy with autologous bone marrow transplant ("HDC–ABMT"). This procedure would cost $150,000. If it were covered under her insurance plan, plaintiff would pay only $30,000 of this total.

Plaintiff's oncologist sought advance approval of coverage from defendant, as required under the plan, who denied coverage. That determination was immediately reviewed by the Office of Personnel Management ("OPM"), which considered plaintiff's request for approval of coverage under the authority of 5 C.F.R. § 890.104. OPM also denied coverage. After unsuccessfully making a further request for reconsideration, the administrative procedures were exhausted by October 27, 1992, and the complaint was filed.

The proposed course of treatment, bone marrow transplant accompanied by intense chemotherapy, is accepted by cancer research specialists and often appears to be successful. Known as HDC/ABMT, it involves withdrawing the patient's bone marrow and treating it while administering high-dosage chemotherapy. The removed bone marrow, which would otherwise have been destroyed, is then restored, thus reinstating the patient's immune and blood-forming systems to offset the chemotherapy's effect, which would otherwise be fatal.

## II. THE CONTRACT

While there is no dispute as to the patient's need to attempt this treatment, in spite of its risks or the qualifications of the attending oncologist, the benefit plan contains a prominent denial of coverage. The

---

1. The complaint was filed on November 10, 1992, accompanied by separate motions for a Temporary Restraining Order and a Preliminary Injunction. After denying the motion for a Temporary Restraining Order on November 10, 1992, with the consent of counsel on both sides, when it appeared that only a final judgment could resolve the issue, defendant filed a full motion for summary judgment on November 16, 1992, plaintiff filed cross-motion papers by supplementing its preliminary injunction motions papers the same day, and argument was held that afternoon.

following pertinent language appears at page 16 of the 1992 Plan:

Organ Transplants/Donor Expenses

**What is Covered** The following human organ transplant procedures: ...

\* Autologous bone marrow (autologous stem cell support) and autologous peripheral stem cell support, for (1) Acute lymphocytic or non-lymphocytic leukemia, (2) Advanced Hodgkin's lymphoma, (3) Advanced Non–Hodgkin's lymphoma, (4) Advanced neuroblastoma, and (5) Testicular, Mediastinal, Retroperitoneal and Ovarian germ cell tumors....

**Limitations** \* Prior approval of the procedure and the facility is required for bone marrow, heart, heart-lung, liver, lung, and pancreas transplants....

**What is Not Covered** \* Services or supplies for or related to surgical transplant procedures for artificial or human organ transplants not listed as specifically covered. Related services or supplies include administration of high dose chemotherapy when supported by transplant procedures.

This material follows page 12, which lists a series of benefits not provided, including "Services and supplies not specifically listed as covered," thus cross-referencing the above-quoted provision, among others.

## III. THE POSITION OF THE PARTIES

Plaintiff advances two major positions in support of her claim. She contends, first, that the provision excluding coverage is ambiguous because elsewhere chemotherapy is listed as covered. Second, she complains that the 1992 plan was changed drastically from the 1991 plan and therefore the disclosures on page 12 of excluded items and on page 35 of changes from 1991 should have been more explicit.

Defendant suggests that it is not responsible for the claim since it does not finance any part of the coverage and the control of the description of the benefit plan rests entirely with OPM. According to this view, plaintiff's suit should be brought against OPM.

In any event, defendant emphasizes that unlike run-of-the-mill insurance coverage disputes in the private sector, the Court's reviewing authority is restricted to the arbitrary and capricious standard established by the Administrative Procedure Act, 5 U.S.C. §§ 701–706, particularly in view of the federal pre-emption provision of the Federal Employee Health Benefits Act, 5 U.S.C. § 8902(m)(1), and related regulations which authorize the federal plans.

## IV. DISCUSSION

### A. Role of OPM

 It is clear that under the terms of the 1992 Plan the named defendant, Group Hospitalization and Medical Services, Inc., trading as Blue Cross/Blue Shield of The National Capital Area, is charged with administration of the Plan, even though it does not underwrite the risk, and that all disputed claims must be processed through it (1992 Plan, p. 29). The fact that this defendant, after denying a claim, moves it to OPM for final resolution under the administrative process outlined on page 30 of the Plan does not detract from the obvious fact that as OPM's representative it can be sued directly in a case like the instant case. In any event, defendant advised OPM of this action. While OPM never appeared at any proceeding, it fulfilled its administrative functions.

OPM has the final authority over all benefits, exclusions, and limitations in FEHB plans. OPM also publishes and distributes the annual Statement of Contract Benefits setting forth these provisions for each health benefit plan, including Blue Cross/Blue Shield. The regulations are clear, however, that a legal action challenging the denial of benefits is to be brought against the carrier of the plan, not OPM. 5 C.F.R. § 890.107 states:

**Legal actions.**

... An action to recover on a claim for health benefits should be brought against the carrier of the health benefits plan.... [A]n enrollee's dispute of an OPM decision solely because it concurs in a health plan carrier's denial of a claim is not a challenge to the legality of OPM's

decision. Therefore, any subsequent litigation to recover on the claim should be brought against the carrier, not against OPM.

Clearly, then, Blue Cross/Blue Shield, not OPM, is the proper defendant in this action.

## B. Standard of Review

 Although OPM does not defend legal actions such as this one, it does review every claim and request for coverage submitted to Blue Cross/Blue Shield. 5 C.F.R. §§ 890.104–890.105. In its review, OPM considers the decision of the carrier, the plan itself, and any information submitted by the claimant. This review is an agency decision within the meaning of the Administrative Procedure Act, 5 U.S.C. § 701(b), reviewable by this Court under 5 U.S.C. § 706. The Court must defer to such an agency decision unless it finds that decision to be plainly erroneous or inconsistent with the agency's regulations, or here, the terms of the contract. *Myers v. United States*, 767 F.2d 1072, 1074 (4th Cir.1985) (reviewing OPM decision interpreting health plan's double coverage provision). *See also Hirsch v. Blue Cross & Blue Shield*, No. 90–3049, slip op. (D.Md. Dec. 26, 1991), for a more thorough discussion of this administrative process and judicial review. Thus, if OPM's decision is consistent with the contract at issue, the Court must affirm OPM's position.

## C. Coverage of HDC–ABMT Treatment

 The plan is clear and not ambiguous with respect to the issue presented. The treatment involves withdrawal of bone marrow and its replacement in conjunction with chemotherapy. The plaintiff's difficulty is no longer limited to breast cancer; the cancer to be treated already extends to her lungs and chest (Plf. Ex. 1). The plan's clear statement indicating when high dosage chemotherapy coupled with bone marrow transplant is covered is not inconsistent with a representation that chemotherapy is available to treat cancer patients. Indeed plaintiff is receiving chemotherapy treatment under the policy. The exclusion from coverage of high dosage chemotherapy is only when this otherwise fatal form

of chemotherapy is used in conjunction with bone marrow treatment, itself a process that requires heightened technical skills and varied techniques, some of which are still in early development. The proper location for the clear non-coverage provision was where other uses of bone marrow techniques along with this special form of chemotherapy are involved (Plan, p. 16).

Plaintiffs argue that because the language on page 16 excluding coverage of "[r]elated services or supplies includ[ing] administration of high dose chemotherapy when supported by transplant procedures" is a change from the 1991 plan, it should have been highlighted in the information on significant changes. The "changes" page does refer specifically to changes in transplant procedures, at page 35: "The language in this brochure, especially the language in ... *Organ Transplants/Donor Expenses* has been modified." Although there was no reference to changes in chemotherapy coverage, the HDC–ABMT procedure is a separate procedure with different risks and effects, as described above. This section of the plan was clearly set forth and properly highlighted. Plaintiff cannot claim misrepresentation.

More significantly, there was no change from the 1991 plan with respect to coverage of HDC–ABMT. Autologous bone marrow transplants were covered for even fewer conditions in the 1991 plan than in the 1992 plan. Coverage of services related to autologous bone marrow transplants was limited to the transplants covered, just as in the 1992 plan, except that the 1992 plan now specifies that high dose chemotherapy is included in related services not covered. The 1992 plan clarified the policy; it did not change it. In both 1991 and 1992, Blue Cross/Blue Shield did not provide coverage for high dose chemotherapy when combined with bone marrow transplants not listed as covered.

The contract is clear. HDC–ABMT is not covered under the 1992 Plan. Accordingly, Blue Cross/Blue Shield's decision denying coverage and OPM's review and affirmance of that decision are rational. Denial of coverage is clearly not an arbitrary

and capricious decision; indeed, because of the plain language of the contract, the Court would affirm denial of coverage even if that decision were reviewed *de novo.* The Court has sympathy for plaintiff's situation, but this consideration cannot be material to a decision on the merits of this case.

## CONCLUSION

The Court accordingly grants summary judgment to defendant.