**Ruby DUCKWITZ, Plaintiff,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, Defendant.**

**No. 93 C 739.**

United States District Court, N.D. Illinois, E.D.

Feb. 18, 1993.

Norman N. Berkson, Berkson, Gorov & Levin Ltd., Chicago, IL, for plaintiff.

Peter M. Sfikas, William F. Richardson, Peterson & Ross, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Ruby Duckwitz is currently undergoing treatment for life-threatening, inoperable breast cancer. Her physicians have recommended that as a part of a course of treatment plaintiff undergo a High–Dose Chemotherapy/Autologous Bone Marrow Transplant ("HDCT/ABMT"). Without prompt commencement of the course of treatment prescribed, including HDCT/ABMT, plaintiff has been advised she has very little chance for recovery nor for any extended period of disease free life.

Plaintiff is insured under a group health policy issued by defendant General American Life Insurance Co. ("GAL") to Illinois Lumber and Material Dealers Trust ("the Plan"). The Plan is an employee welfare benefit plan under ERISA, 29 U.S.C. § 1001 et seq. The Plan provides at page 2 that "judgments on the payment or denial of health insurance claims ... rests with [GAL]" and at page 4 that "All decisions on eligibility, coverages ... are the responsibility of [GAL]." GAL has refused to grant preauthorization coverage for plaintiff's HDCT/ABMT treatment beyond a limitation of $100,000.

Plaintiff filed suit in the Circuit Court of Cook County, Illinois on January 22, 1993 seeking injunctive relief against defendant's refusal to provide preauthorization coverage. On February 4, 1993, GAL acknowledged coverage but only to a maximum lifetime limit of $100,000. Plaintiff filed an amended complaint for declaratory judgment on February 11, 1993. Defendant GAL on February 16, 1993 filed a

motion to dismiss and a memorandum in support. Plaintiff filed a response to the motion to dismiss on February 17, 1993. For the reasons stated herein, defendant's motion is denied.

As stated by defendant GAL, "On February 11, 1993, plaintiff filed her Amended Complaint seeking a declaratory judgment that GAL's application of the $100,000 lifetime limitation to ABMT was 'arbitrary and capricious' (Amended Complaint, p. 3). That is the issue now before this court." (GAL's Memorandum in Support of Motion to Dismiss, p. 4.)

As described in the case law,[1] HDCT/ABMT is a several step procedure which is expensive and requires the patient's hospitalization. First, physicians remove or "harvest" from the patient the patient's stem or "factory" cells which live in bone marrow and produce white blood cells, red blood cells and platelets. The harvested bone marrow is placed in frozen storage; it will be returned to the body at the completion of chemotherapy. Next, the patient receives high-dosage chemotherapy. The increased and intense doses of chemotherapy or radiation treatment administered to the patient are lethal and would likely destroy the removed bone marrow, if it were to have remained in the patient's body, thereby causing the patient's death. Patients survive the treatment because, after the completion of the chemotherapy, a patient's preserved, living bone marrow, which contain the stem or "factory" cells, are reintroduced and reinfused into the patient intravenously. Thus, the patient's immune and blood-forming systems are reinstated, which counteracts the ill effects of the chemotherapy and allows the patient to survive the otherwise fatal chemotherapy treatment.

The process has been accepted by the medical community and the courts as constituting a generally accepted medical treatment for breast cancer when such can-

---

1. See e.g., Fuja v. Benefit Trust Life Insurance Company, 809 F.Supp. 1333, 1335–36 (N.D.Ill. 1992) (Conlon, J.); Arrington v. Group Hospitalization and Medical Services, Inc., 806 F.Supp. 287, 288 (D.D.C.1992) (Gesell, J.); Nesseim v. Mail Handlers Benefit Plan, 792 F.Supp. 674, 675 (D.S.D.1992) (Battey, J.).

cer cannot be cured through smaller doses of standard chemotherapy.[2]

Defendant claims that the HDCT/ABMT procedure has a $100,000 maximum lifetime limitation based on the policy term "Organ Transplants", which are listed on a limitation attachment to the Plan and state "Lifetime Maximum $100,000." (Plaintiff's Response to Motion to Dismiss, Exhibit B). Nowhere in the Plan is the term "Organ Transplants" defined.

Indeed, GAL, for a definition of its "Organ Transplants" policy language, looked to pages of *Taber's Cyclopedic Medical Dictionary*, 14 edition (1981) ("Taber's") (Defendant's Memorandum in Support of Motion to Dismiss, Exhibit E). This somewhat dated treatise defines the terms as follows:

> *transplant* ... To transfer tissue or an organ from one part to another as in grafting or plastic surgery. (Exhibit E, p. 1479)

and

> *bone marrow* ... The soft organic material that fills the cavities of the bone. (Exhibit E, p. 198).

In addition to Judge Conlon's December 22, 1992 opinion in *Fuja, supra,* there are earlier reported decisions even more on point as to the issues before the court.[3] Among the authorities is the April 3, 1992 opinion *Nesseim v. Mail Handlers Benefit Plan,* 792 F.Supp. 674 (D.S.D.1992), in which the court held in interpreting language of the plan before it and applying the "arbitrary and capricious" standard that:

> Thus, even a careful reading of the bone marrow exclusionary language would be thought to refer to organ transplants. In the ordinary sense, autologous bone marrow transplants reasonably would not be thought of as an "organ transplant."

The contract is ambiguous. As such, it is to be construed against the defendant. 792 F.Supp. at 678.

Also among the authorities is the November 20, 1992 opinion in *Arrington v. Group Hospitalization and Medical Services,* 806 F.Supp. 287 (D.D.C.1992), in which the court construed a plan that specifically referred to autologous bone marrow procedures as "organ transplant procedures" and explicitly excluded from coverage:

> [r]elated services or supplies includ[ing] administration of high dose chemotherapy when supported by transplant procedures.

806 F.Supp. at 290.

The court in *Arrington* granted summary judgment for the insurance company and against the plaintiff-insured because the insurance contract was clear. *Id.*

Because the *Nesseim* and *Arrington* opinions were available to GAL when making its determination in early February 1993 as to the meaning of the Plan's language in this case, the court must consider whether GAL was "arbitrary and capricious" in light of those cases and all the facts that GAL had before it. This court must also bear in mind the rules of federal common law contract interpretation the Seventh Circuit has enunciated:

> In *Hammond* [*v. Fidelity and Guaranty Life Insurance Company* ] 965 F.2d 428 (7th Cir.1992) we summarized the relevant rules of federal common law contract interpretation as follows:
>
> [W]e interpret the terms of the [ERISA-governed] policy "in an ordinary and popular sense as would a [person] of average intelligence and experience." *Evans v. Safeco Life Ins. Co.,* 916 F.2d 1437, 1441 (9th Cir.1990) (quoting *Allstate Insurance Co. v. Ellison,* 757 F.2d 1042, 1044 (9th Cir.1985)). Ambiguous terms in an insurance contract will be strictly construed in favor of the insured.

---

2. *See* cases cited in footnote one, *supra.*

3. *See e.g., Nesseim* and *Arrington* cited in footnote 1. GAL, or its counsel, in looking for a favorable definition (or for that matter judicial opinions on point) apparently failed go to its law firm's library and look under West Key

Note, Insurance 531.1 or turn on one of its LEXIS terminals and search for any federal opinions within the last year which contain the term "autologous bone marrow transplant." Both the *Nesseim* and *Arrington* cases are published opinions.

*Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble,* 924 F.2d 633, 638 (7th Cir.1991). However, we will "not artificially create ambiguity where none exists." *Evans,* 916 F.2d at 1441. *Hammond,* 965 F.2d at 430.

*Phillips v. Lincoln National Life Ins. Co.,* 978 F.2d 302, 307–08 (7th Cir.1992).

The court is mindful that before it is defendant's motion to dismiss, but since the parties have submitted evidentiary material beyond the complaint and its attachments, the court will comment thereon.

Firstly, under the definition in *Taber's,* "bone marrow" is not defined as an organ but an "organic (living) material." *Taber's* at 198. Secondly, the definition of "transplant" in *Taber's* requires a transfer of "tissue or an organ from one part to another." *Taber's* at 1479. Therefore, construing these definitions in their ordinary sense, an HDCT/ABMT procedure is not an organ transplant. It is the removal of "an organic substance" from the body and the return of that organic substance to the body—not "from one part to another."

Moreover, defendant places emphasis on Judge Conlon's phraseology in her opinion in *Fuja,* 809 F.Supp. at 1335. (*See* Defendant's Memorandum in Support, pp. 8–9.)[4] Judge Conlon found the "stored marrow is reinfused" and only used the word "transplanted" parenthetically.

The court finds quite apt plaintiff's counsel's comments in his February 5, 1993 letter to Mr. Sfikas, GAL's counsel:

> Reinfusing one's own bone marrow to a person is no more a transplant than would be retransfusing one's own blood which had been stored in anticipation of surgery.

(Plaintiff's Response to Motion to Dismiss, Exhibit G.)

Had defendant GAL desired to place a limitation on HDCT/ABMT's procedure in the Plan's policy, it certainly could have been less ambiguous and more explicit, and perhaps used language similar to the exclusionary language held to be effective in *Arrington v. Group Hospitalization and Medical Services,* 806 F.Supp. 287, 290 (D.D.C.1992).

Absent such explicit language, or the disclosure of substantial contrary authority, this court is inclined to agree with the only other court to have ruled directly on the issue, *Nesseim v. Mail Handler's Benefit Plan,* 792 F.Supp. 674, 678 (D.S.D.1992) and hold:

> In the ordinary sense, autologous bone marrow transplants reasonably would not be thought of as an "organ transplant."

## CONCLUSION

Defendant GAL's motion to dismiss is DENIED. The parties are strongly urged to promptly discuss settlement to avoid any undue delay.[5]

---

**4.** The Memorandum states: "Judge Conlon held that HDCT/ABMT is a process 'whereby the patient's own (autologous) stored marrow is reinfused (*transplanted*) intravenously.'" (Opinion, ¶ 3, p. 3; emphasis added.)

**5.** *See,* Edward Felsenthal, *Life–and–Death Medical Cases Drag in Courts,* Wall Street Journal, February 17, 1993, at B–1, B–10.