Clifford Jearold NESSEIM, Mary Lou Nesseim, Plaintiffs–Appellees,

v.

MAIL HANDLERS BENEFIT PLAN, Defendant–Appellant.

No. 92–2009.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1993.

Decided June 1, 1993.

Denis F. Gordon, Washington, DC, argued for defendant-appellant.

Monte R. Walz, Sioux Falls, SD, argued, for plaintiffs-appellees.

Before JOHN R. GIBSON, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Mail Handlers Benefit Plan appeals from the district court's entry of summary judgment in favor of Clifford Jearold and Mary Lou Nesseim on their claim for health care benefits to cover high-dose chemotherapy accompanied by an autologous bone marrow transplant. The Plan denied the Nesseims' request for precertification of coverage for treatment of Mary Lou's breast cancer, the Nesseims appealed to the Office of Personnel Management, and the OPM refused to compel coverage. The district court reviewed the OPM's decision de novo, and held that the Plan was ambiguous and the treatment should be covered regardless of whether a de novo or arbitrary and capricious standard of review applied. We conclude that the OPM's decision should have been reviewed under the arbitrary and capricious standard. Accordingly, because the Plan limits coverage of autologous bone marrow transplants to certain diseases, and breast cancer is not among those diseases listed, we reverse.

Clifford Nesseim, an Internal Revenue Service employee, and his wife, Mary Lou, were enrolled in the Mail Handlers Benefit Plan[1] when Mary Lou was diagnosed as having advanced metastatic breast cancer which had spread to her lymph nodes. *Nesseim v. Mail Handlers Benefit Plan*, 792 F.Supp. 674, 675 (D.S.D.1992). Her physicians recommended high-dose chemotherapy accompanied by an autologous bone marrow transplant because standard chemotherapy had failed to eliminate the cancer. *Id.* The high-dose treatment involves removal of the patient's bone marrow so the patient can receive extremely high levels of chemotherapy and radiation which would normally destroy the bone marrow and cause death. *Id.* The bone marrow is returned to the patient's body after the chemotherapy and radiation are completed. *Id.* The procedure is expensive and requires hospitalization. *Id.* Thus, the hospital required that the Nesseims make an advance payment of $160,000 or obtain precertification of coverage from the Plan. *Id.*

On December 20, 1991, the Nesseims sought precertification. *Id.* On January 8, 1992, the Plan denied their request because it determined that breast cancer fell outside the 1992 Plan Brochure's coverage list. *Id.* at 675–76. The Plan directed the Nesseims to the statement that "[b]enefits for autologous bone marrow transplants are limited to patients with acute leukemia in remission, resistant non-Hodgkins lymphomas, resistant or recurrent neuroblastomas." *Id.* at 676. The Plan also stated that the brochure specifically excluded coverage for "any transplant not listed as covered." *Id.* Finally, the Plan pointed to the brochure's provision excluding all charges associated with services or supplies excluded under a single benefit category. *Id.*

The Nesseims appealed the Plan's decision to the OPM, arguing that the bone marrow transplant was part of the covered chemotherapy treatment, that the Plan was ambiguous and should be construed in favor of the Nesseims, that a reasonable person would expect coverage for all types of chemotherapy treatment, and that it would be unconscionable to deny the life-saving treatment. *Id.* The OPM responded that it had "considered

1. The Plan provides health benefits for federal employees pursuant to the Federal Employees' Health Benefits Act, 5 U.S.C. §§ 8901–8914 (1988).

the points raised ... and appreciate[d] the part played by the bone marrow support procedure in Mrs. Nesseim's treatment." The OPM then referred to the same language as the Plan, determined that breast cancer was not included in the bone marrow transplant list, and denied the Nesseims' appeal. *Id.* The Nesseims then filed this suit.

■ The district court recognized that an administrative agency's decision is generally reviewed under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A) (1988).[2] 792 F.Supp. at 677. The court, however, determined that this case essentially involved a contract dispute, and that the OPM had not conducted an independent agency review, but simply affirmed the Plan's interpretation of the contract. *Id.* The court concluded that the OPM's "rubber stamp" decision did not merit deference and the contract should be reviewed de novo. *Id.* The court ruled that the contract terms were ambiguous and should be construed against the Plan. *Id.* at 678. The court found that the Plan's enumeration of "Other Medical Benefits" specifically provided coverage for chemotherapy treatments, that both high- and low-dose chemotherapy treatments were implicitly included, and that high-dose chemotherapy cannot be completed without an autologous bone marrow transplant. *Id.* The court also determined that the Plan's limitations referred only to organ transplants, and that an autologous bone marrow transplant is not reasonably considered an organ transplant. *Id.* The court granted summary judgment, and alternatively, held that even under the arbitrary and capricious

standard of review, the Nesseims were entitled to summary judgment because the OPM's decision was "arbitrary, capricious, and contrary to law." *Id.* The Plan appealed.[3]

■ The Plan argues that the district court should have applied the arbitrary and capricious standard of review and affirmed the OPM's determination. The Plan also argues that even under a de novo review, the contract unambiguously excludes coverage for bone marrow transplants when used to treat breast cancer.

The OPM provided the Mail Handlers Benefit Plan to federal employees as one of many plans authorized under the Federal Employees' Health Benefits Act, 5 U.S.C. §§ 8901–8914. Section 8902(a) authorizes the OPM to contract with private insurance carriers or employee organizations to provide health benefits.[4] The Act also authorizes the OPM to determine what "maximums, limitations, exclusions, and other definitions of benefits" will be included in each contract. 5 U.S.C. § 8902(d). To ensure uniformity in the administration of benefits under the Act (and thus control costs), section 8902(m)(1) mandates that once the OPM enters into a benefits contract, that contract has the preemptive force of federal law. 5 U.S.C. § 8902(m)(1); *Hayes v. Prudential Ins. Co.,* 819 F.2d 921, 926 (9th Cir.1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988). In addition, each contracting carrier must abide by the OPM's decisions regarding coverage, 5 U.S.C. § 8902(j), and each claimant whose claim has been denied by a con-

**2.** Section 706(2)(A) provides that "[t]he reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

**3.** After the district court's decision, Mary Lou Nesseim received the high-dose treatment and the Plan paid the associated costs. Mary Lou Nesseim died on July 18, 1992.

We asked the parties to submit briefs regarding the issue of mootness. After careful examination, we conclude that the Plan's compliance with the district court's order does not render this case moot. *See Barnes v. Bosley,* 828 F.2d 1253, 1257 n. 4 (8th Cir.1987) (holding that mere payment of a judgment did not render an issue moot when the appellant obviously did not in-

tend to abandon its right to appeal). *See also Doe v. Brookline Sch. Comm.,* 722 F.2d 910, 914 (1st Cir.1983); *United States v. Timberland Paving & Constr. Co.,* 745 F.2d 595, 598 (9th Cir. 1984).

**4.** Here, the OPM contracted with the National Postal Mail Handlers Union to create the Mail Handlers Benefit Plan, and the Union subcontracted with Continental Assurance Company to underwrite and administer the Plan. Administering the Plan includes processing claims, which are paid from designated funds in the United States Treasury. Neither the Plan nor Continental has any financial interest in the granting or denial of a claim.

tracting carrier must appeal to the OPM before proceeding with a civil suit. 5 C.F.R. § 890.105 (1992); *Kobleur v. Group Hosp. & Medical Servs.*, 954 F.2d 705, 711 (11th Cir. 1992); *see also Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 593–94 (2d Cir.1993). The Union and Continental Assurance Company's contract with the OPM also provides that:

> [n]o action at law or equity shall be brought to recover on a claim for benefits under the Plan until the administrative remedy provided at Title 5 of the Code of Federal Regulations, section 890.105 has been exhausted.... Any action brought to recover on a claim for benefits under the Plan shall be limited solely to a review of the OPM decision under Title 5, United States Code, Section 706 on the grounds that the OPM decision is arbitrary, capricious, or otherwise not in accordance with law.

■ This framework limits civil actions for benefits to a review of the OPM's decision under 5 U.S.C. § 706(2)(A). *See Caudill v. Blue Cross & Blue Shield*, 1993 WL 134615, at *4–5 (4th Cir. April 29, 1993) (applying the arbitrary and capricious standard of review) (motion for publication granted May 17, 1993); *Harris v. Mutual of Omaha Cos.*, 992 F.2d 706, 712 (7th Cir.1993) (holding that the OPM's decision should be reviewed under the arbitrary and capricious standard). A de novo review is appropriate only if the agency action is "adjudicatory in nature and the agency factfinding procedures are inadequate [or] ... issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

■ The district court determined that because the OPM's decision was a mere "rubber stamp" of the Plan's determination, it did not warrant application of the deferential section 706 standard. 792 F.Supp. at 677. We disagree. The mere brevity of the OPM's decision does not establish the absence of the agency's independent review. *Camp v. Pitts*, 411 U.S. 138, 143, 93 S.Ct.

1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam); *Harris*, 992 F.2d at 712. Even though the OPM's written decision was brief, it "indicated the determinative reason for the final action taken." *Id.*; *see also Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823–24.

■ Although the district court conducted a de novo review, it also held that the Nesseims were entitled to summary judgment under the arbitrary and capricious standard of review. Our duty on appeal is to "render an independent decision on the basis of the same administrative record as that before the district court." *First Nat'l Bank v. Smith*, 508 F.2d 1371, 1374 (8th Cir.1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *Brown v. United States Dept. of Interior*, 679 F.2d 747, 748–49 (8th Cir.1982). We review the administrative agency's decision under the section 706(2)(A) arbitrary and capricious standard, and accord the district court's decision no particular deference. *First Nat'l Bank*, 508 F.2d at 1374; *Brown*, 679 F.2d at 748–49. The OPM's decision must stand or fall on the propriety of the reasons given. *Camp*, 411 U.S. at 143, 93 S.Ct. at 1244.

■ The OPM based its decision on the Plan's 1992 statement of benefits as set forth in the Plan's brochure. It recognized that the Plan limited coverage of an autologous bone marrow transplant to the treatment of certain diseases, and that the Plan specifically excluded from coverage any transplant not listed. The OPM considered the list and concluded that because breast cancer was not included, it was not covered. The language the OPM considered appears in the Plan's "Surgical Benefits" section. Although another section refers to chemotherapy treatment (without specifying high or low dosage), we cannot conclude that the OPM's decision to look to the "Surgical Benefits" section for coverage was arbitrary or capricious. The high-dose treatment requires that the patient's bone marrow be removed—a surgical procedure. The OPM "considered the points raised" and understood the relationship between the chemotherapy treatment and the bone marrow transplant, specifically stating

that it "appreciated the part played by the bone marrow support procedure."

We conclude that the OPM's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 706(2)(A). Accordingly, we reverse.