

1994 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

9-22-1994

# Goepel v. Nat'l Postal Mail Handlers Union

Precedential or Non-Precedential:

Docket 93-5657

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Goepel v. Nat'l Postal Mail Handlers Union" (1994). *1994 Decisions.* Paper 141.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/141

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 93-5657


MARILYN GOEPEL; RONALD GOEPEL,

Appellants

v.

NATIONAL POSTAL MAIL HANDLERS UNION,
A DIVISION OF LIUNA, d/b/a MAIL
HANDLERS BENEFIT PLAN


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 93-03711)


Argued August 2, 1994

BEFORE:  STAPLETON and GREENBERG, Circuit Judges,
         and ATKINS, District Judge*

         (Filed:  September 27, 1994)


                         Arlene G. Groch (argued)
                         321 Shore Road, P.O. Box 266
                         Somers Point, New Jersey 08244

                         Attorney for Appellants

                         Denis F. Gordon (argued)
                         Susan J. Pannell
                         Gordon & Barnett
                         1133 21st Street, N.W.
                         Suite 450
                         Washington, D.C. 20036

                         Attorneys for Appellee

* Honorable C. Clyde Atkins, Senior United States District Judge for the Southern District of Florida sitting by designation.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual History

Appellant Ronald Goepel is a civilian employee of the United States Department of the Navy. He and his wife, appellant Marilyn Goepel, reside in Deptford, New Jersey, and have been enrolled in the Mail Handlers Benefit Plan, a fee-for-service health benefits plan, continuously since 1981. The Mail Handlers Benefit Plan is one of the health insurance plans available to federal government employees and their families. These healthcare plans are established pursuant to the Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. § 8901 et seq., which authorizes the Office of Personnel Management (OPM) to contract with carriers to provide health benefits plans to federal employees and their families.

OPM has contracted with the appellee, the National Postal Mail Handlers Union, a division of the Laborers International Union of North America, AFL-CIO, for the provision of the Mail Handlers Benefit Plan, and the Union has subcontracted with Continental Assurance Company to underwrite

and administer the Plan.  Each year OPM and the Union negotiate the terms of the Plan and document these terms in the Plan brochure, which is included as an appendix to the contract between OPM and the Union.

In January 1993, Marilyn Goepel learned that she had metastatic breast cancer.  Thereafter, her consulting oncologist, Dr. David L. Topolsky of Hahnemann University, recommended that she undergo a treatment in which high doses of chemotherapy are followed by a peripheral stem cell infusion (HDC/APCR).[1]  On July 14, 1993, Dr. Topolsky wrote to the Plan requesting a determination of whether this treatment would be covered.  Subsequently, on August 5, 1993, one of the Plan's customer service representatives stated in a telephone conversation that the treatment would not be covered, and indicated that it would take four to six weeks for Marilyn Goepel to receive an official notice of the Plan's denial of coverage in the mail.

The Goepels contacted Congressman Robert E. Andrews, who then sent a letter dated August 6, 1993, to OPM on their behalf.  Within a week, OPM responded to Congressman Andrews'

---

[1].  In a certification dated August 17, 1993, Dr. Topolsky explained the treatment as follows: it "works on the principal [sic] that the high doses of chemotherapy required to substantially kill or eradicate a patient's tumor will, as a side-effect, fatally destroy the patient's bone marrow. Therefore, a sample of either bone marrow or bone marrow cells which have been induced to enter the peripheral blood, are removed and stored in a freezer prior to the high-dose chemotherapy process.  Following administration of the chemotherapy to the patient, the previously stored marrow cells are given back to the patient to protect them from an otherwise fatal toxic-side-effect of the treatment."  See app. at 94.

inquiry with a letter stating that page 19 of the 1993 Plan brochure "explicitly excludes benefits for HDCT/ABMT for breast cancer," and that therefore OPM had "no contractual basis to ask the Plan to provide benefits for Mrs. Goepel."[2]  See app. at 445. The Plan also sent a letter dated August 10, 1993, to Dr. Topolsky, denying his request for pre-authorization of benefits for HDC/APCR for Mrs. Goepel on the grounds that the terms of the 1993 Plan brochure did not cover the use of HDC/APCR for the treatment of breast cancer.  The Goepels did not appeal the Plan's denial of coverage to OPM.  However, the parties have stipulated that "[i]f plaintiffs were required to exhaust any right they had to seek review by OPM[,] . . . that exhaustion requirement was satisfied" by Congressman Andrews' letter to the OPM on Mrs. Goepel's behalf and OPM's response to that letter. See app. at 26.

### B. Procedural History

On August 19, 1993, the Goepels filed a complaint in the Superior Court of New Jersey, Law Division, alleging that: (1) the Plan violated the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq. (West 1993); (2) the Plan breached its contract by refusing to certify her coverage for HDC/APCR; (3) any exclusion of coverage for HDC/APCR in the Plan

---

[2].  In its letter the OPM referred to the coverage sought as "high dosage chemotherapy/autologous bone marrow transplant (HDCT/ABMT)."  In view of our result we need not discuss the significance, if any, of the distinction between HDC/APCR and HDCT/ABMT.

brochure was unconscionable; and (4) the Plan's handling of Mrs. Goepel's claim involved unfair claim settlement practices in violation of N.J. Stat. Ann. § 17B:30-13.1 (West 1985). See app. at 1-10. On these bases, the Goepels sought a declaratory judgment, injunctive relief, damages, and counsel fees. Id.

The Plan immediately removed the case to the United States District Court for the District of New Jersey. In its notice of removal, the Plan stated that the case was removable pursuant to 28 U.S.C. §§ 1441(b) and (c), because the Goepels' breach of contract claim "arises under the laws of the United States," and their other state law claims were "inextricably intertwined" with the breach of contract claim. Subsequently, the Goepels filed a motion to remand the case to the state court on the grounds that their breach of contract claim did not raise a federal question, as it was merely a private contractual dispute between an insured and a health care insurer. However, the district court denied the motion to remand. See Goepel v. Mail Handlers Benefit Plan, No. 93-3711 (D.N.J. Sept. 10, 1993). Subsequently, the district court tried the case on the merits pursuant to a joint stipulation of the facts, and entered judgment in favor of the Plan on all counts of the complaint. See Goepel v. Mail Handlers Benefit Plan, No. 93-3711 (D.N.J. Sept. 24, 1993).


## II. DISCUSSION

In denying the Goepels' motion to remand this case to New Jersey Superior Court, the district court held that the case

was removable pursuant to 28 U.S.C. § 1441(b) because "the matter [wa]s one 'arising under' the laws of the United States."  See Goepel v. Mail Handlers Benefit Plan, No. 93-3711, at 2 (D.N.J. Sept. 10, 1993).  Section 1441(b) provides in relevant part that

> [a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

The Goepels argue that the Plan improperly removed the case because they base their claims exclusively on state law, and thus do not raise any "federal questions" over which the district court would have original jurisdiction pursuant to 28 U.S.C. § 1331 and removal jurisdiction pursuant to 28 U.S.C. § 1441(b).  We confine our review of the district court's subject matter jurisdiction to whether it had federal question removal jurisdiction over the Goepels' claims, as the Plan removed the case to district court on this basis alone, and it does not contend that it could have removed the case on the basis of diversity of citizenship.  See 28 U.S.C. §§ 1332, 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987) ("Absent diversity of citizenship, federal-question jurisdiction is required [for removal].").

"'[F]ederal question' cases . . . [are] those cases 'arising under the Constitution, laws, or treaties of the United States.'"  Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546 (1987) (quoting 28 U.S.C. § 1331).  "The presence or absence of federal-question jurisdiction is governed

by the 'well-pleaded complaint rule,' which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. at 392, 107 S.Ct. at 2429 (citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13, 57 S.Ct. 96, 97-98 (1936)). "'The rule makes the plaintiff the master of the claim,'" as generally "'he or she may avoid federal jurisdiction'" by drafting a complaint which relies exclusively on state law. Krashna v. Oliver Realty, Inc., 895 F.2d 111, 113 (3d Cir. 1990) (quoting Caterpillar, Inc. v. Williams, 482 U.S. at 392, 107 S.Ct. at 2429).

The Goepels' complaint does not purport to rely on federal law. Two of their its claims, namely the claims alleging violations of New Jersey's Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq., and New Jersey's law against unfair claim settlement practices, N.J. Stat. Ann. § 17B:30-13.1, are based expressly on New Jersey statutes. See app. at 1-4, 8-10. Moreover, although the Goepels' breach of contract and unconscionability claims do not rely expressly on either state or federal law, in the absence of any indication that the Goepels intended to invoke federal common law, we conclude that "on their face" these claims are grounded exclusively on New Jersey common law.[3]

---

[3]. We do not reach the question of whether the Goepels could have stated a cause of action under federal common law.

Nevertheless, the Plan argues that the Goepels' complaint "raises a federal question on its face" because it "seeks to enforce rights under a contract made by OPM pursuant to authority conferred by FEHBA," and "construction of that federal contract is governed exclusively by federal law." See br. at 32. Although the nature of the contract that the Goepels are seeking to enforce ultimately may lead a court to find that their state claims are preempted, their complaint does not "raise a federal question on its face" merely by virtue of the fact that it alludes to a federal contract.[4] Thus, if the "well-pleaded complaint rule" were an unqualified bar to federal question jurisdiction, our analysis would end here, as on its face the Goepels' complaint does not raise a federal question. However, as we recognized in United Jersey Banks v. Parell, 783 F.2d 360, 366 (3d Cir.), cert. denied, 476 U.S. 1170, 106 S.Ct. 2892 (1986), "the issue is not as straightforward as the black letter law appears."

In Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841 (1983), the Supreme Court "referred to two situations where federal jurisdiction could be available even though plaintiff based its claim in state court on state law: (1) when 'it appears that some substantial, disputed question of federal law is a necessary element of one of the

---

[4]. See Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 152-54 (4th Cir. 1994) (holding that a complaint's reference to federal environmental statutes as the basis for a claim alleging negligence per se did not suffice to state a claim arising under federal law).

well-pleaded state claims' or (2) when it appears that plaintiff's claim 'is "really" one of federal law.'" United Jersey Banks v. Parell, 783 F.2d at 366 (quoting Franchise Tax Bd., 463 U.S. at 13, 103 S.Ct. at 2848). Subsequently, in United Jersey Banks v. Parell, we concluded that "[c]areful examination of the framework of the Court's analysis of the 'substantial, disputed question of federal law' issue" in Franchise Tax Bd. "manifests that the Court was not enunciating a new basis for federal jurisdiction but instead was reaffirming the traditional well-pleaded complaint test." Id. (citing Franchise Tax Bd., 463 U.S. at 13-22, 103 S.Ct. at 2848-53). Accordingly, unless we determine that one of the Goepels' state claims "is 'really' one of federal law," Franchise Tax Bd., 463 U.S. at 13, 103 S.Ct. at 2848, removal of the case to the district court was improper, and we must order it remanded to the New Jersey Superior Court.

A state claim which is "really one of federal law" may be removed to federal court because "it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." Franchise Tax Bd., 463 U.S. at 22, 103 S.Ct. at 2853. The Supreme Court has held that a state cause of action is "really" a federal cause of action which may be removed to federal court if the "federal cause of action completely preempts . . . [the] state cause of action." Franchise Tax Bd., 463 U.S. at 24, 103 S.Ct. at 2854. This principle is "known as the 'complete preemption' doctrine," Caterpillar, Inc. v. Williams, 482 U.S. at 393, 107 S.Ct. at

2430, and it is "a distinct concept from ordinary preemption,"
Railway Labor Excecutives Ass'n v. Pittsburgh & Lake Erie R. Co.,
858 F.2d 936, 941 (3d Cir. 1988).[5]  Thus, "'[t]he fact that a
defendant might ultimately prove that a plaintiff's claims are
pre-empted . . . does not establish that they are removable to
federal court.'"  Id. (quoting Caterpillar, Inc. v. Williams, 482
U.S. at 398, 107 S.Ct. at 2432).[6]

As we stated in Railway Labor Executives Ass'n v.
Pittsburgh & Lake Erie R. Co., 858 F.2d at 939,

> [t]he complete preemption doctrine holds that
> 'Congress may so completely preempt a
> particular area, that any civil complaint
> raising this select group of claims is
> necessarily federal in character.'
> Metropolitan Life Ins. Co. v. Taylor, 481
> U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55
> (1987).  In such cases, 'any complaint that
> comes within the scope of the federal cause

---

[5].  "This same principle has been referred to elsewhere as the 'artful pleading' doctrine, under which a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state law claim."  United Jersey Banks v. Parell, 783 F.2d at 367 (citations omitted).  See also Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2, 101 S.Ct. 2424, 2427 n.2 (1981) ("As one treatise puts it, courts 'will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum . . . [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization") (quoting 14 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3722 at 564-66 (1976) (citations omitted)).

[6].  "[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."  Caterpillar, Inc. v. Williams, 482 U.S. at 393, 107 S.Ct. at 2430 (citing Franchise Tax Bd., 463 U.S. at 12, 103 S.Ct. at 2847-48).

of action [created by the federal statute] necessarily "arises under" federal law,' Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 24, 103 S.Ct. 2841, 2854 (1983), for purposes of removal based on federal question jurisdiction.

The Supreme Court has held that both the Labor Management Relations Act (LMRA), and the Employee Retirement Income Security Act (ERISA) "completely preempt" certain state causes of action. The Supreme Court first applied the complete preemption doctrine in Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 88 S.Ct. 1235 (1968), holding that Section 301 of LMRA "is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" Franchise Tax Bd., 463 U.S. at 23, 103 S.Ct. at 2853 (citing Avco Corp. v. Aero Lodge No. 735, 376 F.2d 337, 340 (6th Cir. 1967), aff'd, 390 U.S. 557, 88 S.Ct. 1235).  Later, in Metropolitan Life Ins. Co. v. Taylor, 481 U.S. at 63–67, 107 S.Ct. at 1546–48, the Supreme Court held that ERISA completely preempted the common law contract and tort claims brought by an ERISA plan beneficiary asserting improper processing of a claim for benefits under the plan.  However, in Franchise Tax Bd., an earlier case, the Supreme Court held that ERISA did not completely preempt "a suit by state tax authorities both to enforce . . . levies against funds held in trust pursuant to an ERISA-covered employee benefit plan, and to declare the validity of the levies notwithstanding ERISA."  Franchise Tax Bd., 463 U.S. at 28, 103 S.Ct. at 2856.

The Court in Franchise Tax Bd. based its determination that ERISA did not preempt a state law action by state tax

authorities seeking to enforce a tax levy against an ERISA plan in part on the fact that ERISA "d[id] not provide an alternative cause of action in favor of the State to enforce its rights." Id. at 26, 103 S.Ct. at 2855. In contrast, section 301 of LMRA "expressly supplied the plaintiff in Avco with a federal cause of action to replace its pre-empted state contract claim," id., and section 502(a) of ERISA expressly supplied the plaintiff in Metropolitan with a federal cause of action to replace his preempted state contract and tort claims, Metropolitan Life Ins. Co. v. Taylor, 481 U.S. at 65, 107 S.Ct. at 1547. Based on this distinction between Franchise Tax Bd., on the one hand, and Avco and Metropolitan, on the other hand, we have held that the complete preemption doctrine applies only if "the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls." Railway Labor, 858 F.2d at 942 (citing Franchise Tax Bd., 463 U.S. at 24, 26, 103 S.Ct. at 2854–55). We also have identified a second prerequisite for the application of the complete preemption doctrine: "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." Id. (citing Metropolitan Life, 481 U.S. at 64–66, 107 S.Ct. at 1547–48).

Thus, based on our construction of Franchise Tax Bd., "[t]he doctrine of complete preemption applies only when [these] two circumstances are present." Allstate Ins. Co. v. The 65 Security Plan, 879 F.2d 90, 93 (3d Cir. 1989). See also Krashna v. Oliver Realty, Inc., 895 F.2d at 114 (applying the two factors

identified in <u>Railway</u> and <u>Allstate</u> as prerequisites for the application of the complete preemption doctrine). We also have held that the only state claims that are "really" federal claims and thus removable to federal court, <u>Franchise Tax Bd.</u>, 463 U.S. at 13, 103 S.Ct. at 2848, are those that are preempted completely by federal law. <u>Railway Labor</u>, 858 F.2d at 942 ("If the federal statute creates no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate, recharacterization as a federal claim is not possible and there is no claim arising under federal law to be removed and litigated in the federal court.") (citing <u>Franchise Tax Bd.</u>, 463 U.S. at 24, 26, 103 S.Ct. at 2854-55) (footnote omitted).

Without applying the two-part test for complete preemption, which we have recognized as the only basis for recharacterizing a state law claim as a federal claim removable to a district court, the district court concluded that the removal was proper because the Goepels' complaint was "'necessarily federal in character by virtue of the clearly manifested intent of Congress.'" <u>Goepel v. Mail Handlers Benefit Plan</u>, No. 93-3711, at 10 (D.N.J. Sept. 10, 1993) (quoting <u>Metropolitan</u>, 481 U.S. at 67, 107 S.Ct at 1548). The district court cited FEHBA's language, its legislative history, and its resemblance to ERISA as evidence of Congress's intent to displace state law.

> With respect to preemption, FEHBA states that
> [t]he provisions of any contract under this
> chapter which relate to the nature or extent
> of coverage or benefits (including payments

> with respect to benefits) shall supersede and
> preempt any State or local law, or any
> regulation issued thereunder, which relates
> to health insurance or plans to the extent
> that such law or regulation is inconsistent
> with such contractual provisions.

5 U.S.C. § 8902(m)(1). In some respects this provision does resemble ERISA's preemption provision, which states that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a).[7] Moreover, the district court noted that: "the legislative history [of FEHBA] makes it clear that its intent was to 'ensure that benefits and coverage under the program . . . [would] be uniform.'" Goepel v. Mail Handlers Benefit Plan, No. 93-3711, at 6 (D.N.J. Sept. 10, 1993) (quoting S. Rept. No. 903, 95th Cong. 2d Sess. 6, reprinted in 1978 U.S.C.C.A.N. 1413, 1417).

However, ERISA contains a civil enforcement provision expressly authorizing ERISA beneficiaries to bring actions to recover benefits under an ERISA plan. See 29 U.S.C. § 1132(a).

---

[7]. There is, of course, a distinction between the preemption provisions of ERISA and FEHBA. The former preempts "any and all state laws" having anything to do with employee benefit plans; the latter preempts state law relating to FEHBA health insurance or plans only "to the extent that such law . . . is inconsistent with [a] contractual provision[]" of an FEHBA policy. ERISA thus preempts all state law in a particular area. Under the FEHBA, however, there is no preemption, even in the area of FEHBA health insurance and plans, unless there is a conflict between the particular state law being relied upon in the litigation and a specific contractual provision in an FEHBA policy.

In contrast, FEHBA does not create a cause of action vindicating a beneficiary's interest in recovering his or her benefits under a plan. FEHBA only provides that "[t]he district courts of the United States have original jurisdiction, concurrent with the United States Claims Court, of a civil action or claim against the United States founded on this chapter." 5 U.S.C. § 8912. But the United States is not a party to this action. Moreover, the regulations promulgated by OPM pursuant to FEHBA expressly provide that "[a]n action to recover on a claim for health benefits should be brought against the carrier of the health benefits plan." See 5 C.F.R. § 890.107.[8] Although an enrollee "may ask OPM to review" a carrier's decision to deny a claim filed under a FEHBA plan, see 5 C.F.R. § 890.105(a), "an enrollee's dispute of an OPM decision solely because it concurs in a health plan carrier's denial of a claim is not a challenge to the legality of OPM's decision," and "[t]herefore, any subsequent litigation to recover on the claim should be brought against the carrier, not against OPM," see 5 C.F.R. § 890.107.[9]

Based on the language of FEHBA and the regulations promulgated pursuant to it, it is clear that FEHBA does not

---

[8]. Congress authorized OPM to "prescribe regulations necessary to carry out" the provisions of FEHBA. 5 U.S.C. § 8913(a).

[9]. "Under a well settled principle of deference, 'considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.'" Katsis v. INS, 997 F.2d 1067, 1069 (3d Cir. 1993) (quoting Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782 (1984)), cert. denied, 114 S.Ct. 902 (1994).

create a statutory cause of action vindicating the same interest that the Goepels' state causes of action seek to vindicate, namely the recovery of benefits from the Plan.[10]  Consequently, we conclude that the complete preemption doctrine does not apply to the Goepels' claims, and thus "recharacterization" of their state claims as federal claims is "not possible" and "there is no claim arising under federal law to be removed and litigated in the federal court."  Railway Labor, 858 F.2d at 942 (citing Franchise Tax Bd., 463 U.S. at 24, 26, 103 S.Ct. at 2854-55).

We recognize that our decision is at odds with the decision by the Court of Appeals for the Fourth Circuit in Caudill v. Blue Cross and Blue Shield of North Carolina, 999 F.2d 74 (4th Cir. 1993).  Like this case, Caudill involved a breach of contract claim brought in state court by a FEHBA plan enrollee seeking to recover benefits from her insurer.  Caudill, 999 F.2d at 76-77.  The insurer removed the case to the district court on the ground that plaintiff's claim "arose under" federal law, and the district court denied the enrollee's motion to remand.  Id. at 77.  Subsequently, on appeal, the United States Court of Appeals for the Fourth Circuit held that the removal was proper.

---

[10].  "There is currently a split of authority with respect to the exhaustion requirements for plans governed by FEHBA."  Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 592 (2d Cir. 1993).  We need not reach the question of whether a plaintiff must seek OPM review of the denial of a benefits claim prior to filing suit to recover benefits under a FEHBA plan or whether OPM review is optional, because in our opinion, even mandatory OPM review would not constitute a statutory federal cause of action vindicating an insured's interest in recovering benefits under a FEHBA plan.

Id. at 79. According to the court in Caudill, "[i]n the area of federal employee health benefits, federal common law entirely replaces state contract law," and "[t]herefore, federal jurisdiction existed over th[e] claim and removal was proper." Id. The Caudill court based its decision not on the complete preemption doctrine, but on Boyle v. United Tech. Corp., 487 U.S. 500, 504, 108 S.Ct. 2510, 2514 (1988), a case which the district court in this case cited as an alternative basis for its denial of the Goepels' motion to remand.[11] See Caudill, 999 F.2d at 77; Goepel v. Mail Handlers Benefit Plan, No. 93-3711, at 10 (D.N.J. Sept. 10, 1993).

Boyle was a tort action brought by the father of a United States marine killed in a helicopter crash during a training exercise. Boyle, 487 U.S. at 502-03, 108 S.Ct. at 2513. The plaintiff alleged that the helicopter manufacturer was liable under Virginia tort law because the defective repair and design of the craft had caused the accident. Id. at 503, 108 S.Ct. at 2513. The jury returned a general verdict in the plaintiff's favor, however, the court of appeals reversed, partially because it concluded that federal law immunized the helicopter manufacturer from state tort liability based on the allegedly defective design of the helicopter. Id. at 503, 108 S.Ct. at 2513-14.

---

[11]. The Caudill court concluded that in light of its holding, it "need not answer the question whether the FEHBA completely preempts state law claims under federal health insurance contracts." Caudill, 999 F.2d at 77.

The Supreme Court affirmed the court of appeals' determination that in the circumstances in Boyle, federal law displaced the "state law which holds Government contractors liable for design defects in military equipment." Id. at 512, 108 S.Ct. at 2518. The Court based this holding on two grounds: (1) that "the procurement of equipment by the United States is an area of uniquely federal interest," id. at 507, 108 S.Ct. at 2516, and (2) that in the circumstances in Boyle, there was a "'significant conflict' . . . between an identifiable 'federal policy or interest and the [operation] of state law,'" id. (quoting Wallis v. Pan American Petroleum Corp., 384 U.S. 63, 68, 86 S.Ct. 1301, 1304 (1966)).

The Court concluded that "the civil liabilities arising out of the performance of federal procurement contracts" involve a "uniquely federal interest," id. at 505-06, 108 S.Ct. at 2515, because "[t]he imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price," id. at 507, 108 S.Ct. at 2515-16. Moreover, the court concluded that in some circumstances, state laws holding government contractors liable for design defects "present[ed] a 'significant conflict' with [the] federal policy," designed to insulate the government against financial liability for the performance of discretionary functions such as "the selection of the appropriate design for military equipment to be used by our Armed Forces." Id. at 511-12, 108 S.Ct. at 2518 (citing 28 U.S.C. § 2680(a)).

The Boyle court limited the scope of the displacement of state laws holding government contractors liable for design defects to the following circumstances: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id. at 512, 108 S.Ct. at 2518. However, the court indicated that "[i]n some cases, . . . where the federal interest requires a uniform rule, the entire body of state law applicable to the area conflicts and is replaced by federal rules." Id. at 508, 108 S.Ct. at 2516 (citations omitted).

Based on the two-part test applied in Boyle, the court in Caudill held that federal common law displaces state claims to recover benefits from a FEHBA plan. Like Boyle, Caudill was not an action brought by or against the United States. Nonetheless, the Caudill court made the following determination:

> [t]he interest in this case is uniquely
> federal because it involves health benefits
> for federal employees. . . [and because the]
> imposition of state law liability here would
> seriously damage not only the government's
> ability to enter into contracts with health
> insurers, but also would affect the price
> paid for such contracts. Most importantly,
> the federal government is a party to this
> contract. Thus, a significant federal
> interest exists here that is even stronger
> than in Boyle.

Caudill, 999 F.2d at 78. The court also concluded that the application of state law to the construction of a contract under FEHBA would present a "significant conflict" with the federal

interest in uniformity evidenced by FEHBA's preemption provision and its provision authorizing OPM review of benefits decisions by insurers.  Id. at 78-79.  The court reasoned that

> [a]s an employer, the federal government has
> an overwhelming interest in ensuring that all
> of its employees subject to a particular
> health insurance policy are treated equally
> regardless of the state in which they live,
> and the application of state law interferes
> with this interest. . . .  [Moreover,] the
> very application of state contract law would
> undermine the uniformity envisioned by
> Congress when it delegated the authority to
> interpret health benefit contracts to OPM.

Id. at 79.  Thus, based on the Supreme Court's decision in Boyle, the Caudill court concluded that removal of the case was proper because "[i]n the area of federal employee health benefits, federal common law entirely replaces state contract law."  Id.

Our decisions in Railway and Allstate require us to reject the Caudill court's holding that Boyle authorizes the removal of a state law contract claim to recover benefits from a FEHBA plan.  First, Boyle is distinguishable from this case because it did not involve the removal of "what purports to be a state law claim" from state court to federal court on the basis of federal question jurisdiction.  Railway, 858 F.2d at 942.  Instead, Boyle involved a state law claim initiated in federal district court on the basis of diversity jurisdiction.  Boyle, 487 U.S. at 502, 108 S.Ct. at 2513.  Thus, Boyle merely deals with a federal defense to a state claim and is therefore a preemption rather than a complete preemption case.

Second, in Railway and Allstate, we held that: (1) in a case removed from state court, a federal court may not recharacterize "what purports to be a state law claim as a claim arising under a federal statute" unless the state claim is completely preempted by federal law, Railway, 858 F.2d at 942, and that (2) a state claim is not preempted completely by federal law unless "the enforcement provisions of a federal statute create a federal cause of action vindicating the same interest that the plaintiff's cause of action seeks to vindicate," Allstate, 879 F.2d at 93. Thus, although the Supreme Court has stated that "the touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress," Metropolitan, 481 U.S. at 66, 107 S.Ct. 1548, we have held that Congress must manifest its intent to authorize the removal of a state claim by enacting a federal statute containing an enforcement provision vindicating the same interest as the state claim.[12] Accordingly, we do not

_____

[12]. Our holding that a state claim is not preempted completely by federal law unless the enforcement provisions of a federal statute create a federal cause of action vindicating the same interest that the plaintiff's state cause of action seeks to vindicate is at odds with the holding in Deford v. Soo Line R. Co., 867 F.2d 1080, 1086 (8th Cir.), cert. denied, 492 U.S. 927, 109 S.Ct. 3265 (1989). The court in Deford explicitly rejected our holding in Railway that because the Railway Labor Act lacked a civil enforcement provision under which the plaintiff could bring its state law claim, the Railway Labor Act did not preempt completely the plaintiff's state law claim. The Deford court stated that while our approach in Railway "sheds some light on whether a federal statute 'pervasively occupies' a field of law, it is unnecessarily narrow," as a court must look not only to "affirmative congressional intent and civil enforcement provisions, but . . . [also] to such factors as the history and purpose of the statute." Deford, 867 F.2d at 1086.

view the Supreme Court's decision in Boyle as an expansion of the complete preemption doctrine, and we reject the Caudill court's construction of Boyle as a case establishing an alternative basis for the removal of a state claim to federal court.

Our outcome is consistent with that reached in Howard v. Group Hosp. Serv., 739 F.2d 1508, 1510-12 (10th Cir. 1984), in which the Court of Appeals for the Tenth Circuit held that the removal of an insured's state law tort and contract claims to recover benefits under a FEHBA plan was improper. However, unlike our decision, the decision in Howard did not rest on the lack of a federal statutory cause of action vindicating the same interests as the insured's state causes of action. In fact, the court in Howard made no reference to the complete preemption doctrine.

Instead, the Howard court based its decision on its conclusion that the federal government had no "articulable interest in the outcome," Howard, 739 F.2d at 1510, of what it characterized as a "private controversy" between an insured and a carrier, id. at 1512. The court "fail[ed] to see how various state court adjudications of [FEHBA] . . . benefits claims . . . [would] frustrate the operation of that program or conflict with a specific national policy," and determined that "[s]tate court awards of monetary judgments in . . . [FEHBA] benefits actions do not have a sufficiently direct effect on the federal treasury to necessitate federal jurisdiction." Id. at 1511. On these grounds, the court concluded that state law, not federal law, controls actions to recover benefits under a FEHBA plan. Id. at

1510-12.  Cf. Howard v. Group Hospital Service, 739 F.2d at 1513 (10th Cir. 1984) (concurring opinion) ("The majority opinion correctly concludes that no federal question jurisdiction is present in this case.  However, the conclusion is reached after a lengthy and unnecessary discussion of whether federal law should apply to the interpretation of the insurance policy.  Even if it were true that federal law should control the interpretation of the contract, that fact alone would be insufficient to establish a federal question giving rise to federal jurisdiction over the case. . . .  Because the arguable federal question appears in this case by way of a defense to simple state law contract claims, there is no basis for the exercise of federal question removal jurisdiction.").

We need not reach the question of whether the Goepels' state law claims are preempted by FEHBA, and thus are governed by federal common law.  The courts are divided on the extent to which FEHBA preempts state law.  As we noted, the court in Howard held that FEHBA does not preempt state law claims to recover benefits under a FEHBA plan.  Nevertheless, "'[t]he weight of authority . . . supports the position that state law claims are preempted,'" Burkey v. Government Employees Hosp. Ass'n, 983 F.2d 656, 659 (5th Cir. 1993) (holding that FEHBA preempts the application of Louisiana statute authorizing the imposition of penalties on plaintiff's insurer) (quoting Federal Plaza Medical Assocs. v. Palermino, 1991 WL 29201 (S.D.N.Y. 1991)).  See, e.g., Caudill, 999 F.2d at 79 (holding that "[i]n the area of federal employee health benefits, federal common law entirely replaces

state contract law"); <u>Nesseim v. Mail Handlers Benefit Plan</u>, 995
F.2d 804, 806 (8th Cir. 1993) ("[t]o ensure uniformity in the
administration of benefits under the Act (and thus control
costs), section 8902(m)(1) mandates that once the OPM enters into
a benefits contract, that contract has the preemptive force of
federal law") (citing 5 U.S.C. § 8902(m)(1)); <u>Harris v. Mutual of
Omaha Companies</u>, 992 F.2d 706, 711-12 n.1 (7th Cir. 1993)
(holding that federal common law of contracts governs the
interpretation of government health insurance contracts)
(citation omitted); <u>Hayes v. Prudential Ins. Co.</u>, 819 F.2d 921,
926 (9th Cir. 1987) (holding that FEHBA preempts all state law
claims relating to a FEHBA plan), <u>cert. denied</u>, 484 U.S. 1060,
108 S.Ct. 1014 (1988); <u>Tackitt v. Prudential Ins. Co,</u>, 758 F.2d
1572, 1575 (11th Cir. 1985) ("the interpretation of government
health insurance contracts is controlled by federal, not state,
law"); <u>Fink v. Delaware Valley HMO</u>, 612 A.2d 485, 492-93 (Pa.
Super. Ct. 1992) (holding that state tort claims brought by
federal employee against HMO were preempted by FEHBA).[13]  <u>But see</u>
<u>Howard v. Group Hosp. Serv.</u>, 739 F.2d at 1512 (holding that
removal of state law claims to recover benefits under a FEHBA

---

[13].  With the exception of <u>Caudill</u>, none of these federal cases
holding that FEHBA preempts state law claims for benefits deals
expressly with the question of whether in the absence of
diversity jurisdiction, FEHBA authorizes the removal of claims
grounded exclusively on state law.  It seems that <u>Nesseim</u>,
<u>Harris</u>, <u>Burkey</u>, and <u>Tackitt</u> involved actions initiated in federal
district court.  The action in <u>Hayes</u> was initiated in state court
and then removed to federal district court, <u>Hayes</u>, 819 F.2d at
923, but the <u>Hayes</u> court's opinion does not address the grounds
for removal.

plan was improper, as state law, not federal law governed the claims); Mooney v. Blue Cross of Western Pennsylvania, 678 F. Supp. 565, 566-67 (W.D. Pa. 1988) (following Howard, and holding that removal of state law claims to recover benefits under FEHBA plan was improper as "[t]here are no 'preempting' provisions in . . . [FEHBA], and absent an explicit instruction, we do not believe Congress intended the federal courts to fashion a federal common law of contracts to govern private disputes between plan participants and providers"); Eidler v. Blue Cross Blue Shield United of Wisconsin, 671 F. Supp. 1213, 1216-17 (E.D. Wis. 1987) (holding that insured's state law tort claim for bad faith was not preempted by FEHBA, as it was "not clear that the tort [wa]s inconsistent with any specific contractual provision").

The Plan is free to raise preemption as a defense in state court, and our holding that FEHBA does not completely preempt the Goepels' state law claims so as to permit removal of this action does not prejudge the merits of such a claim. "State courts are competent to determine whether state law has been preempted by federal law," Railway, 858 F.2d at 942, and absent complete preemption, "they must be permitted to perform that function" with regard to state law claims brought before them, id. Thus, based on our conclusion that the district court lacked subject matter jurisdiction over this case, we will reverse the order of September 10, 1993, denying the motion to remand, will vacate the order of September 24, 1993, entering judgment for the Plan on the merits, and will remand the matter to the district

court so that it may remand the case to the Superior Court of New Jersey.

MARILYN GOEPEL; RONALD GOEPEL v. NATIONAL POSTAL MAIL HANDLERS
UNION – No. 93-5657


Stapleton, J., Concurring:

I agree with all that is said in the opinion of the
court. I write separately only to emphasize the importance, in
my view, of the distinction noted by the court in footnote 7.
Unlike the preemption provision of ERISA, the FEHBA preempts
state law only "to the extent such law . . . is inconsistent with
[a] contractual provision" of a FEHBA policy. 5 U.S.C.
§ 8902(m)(1). I believe the fact that Congress chose to so limit
the preemptive effect of the FEHBA is inconsistent with the
notion that Congress intended to "completely" preempt state law.