STAPLETON, J.,
dissenting:
Because I conclude that the District Court lacked jurisdiction, I respectfully dissent.
I.
Generally, “the ‘well-pleaded complaint rule’ requires that, for removal to be appropriate, a federal question must appear on the face of the complaint.” Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166, 171 (3d Cir.1997). “Under a narrow exception to the well-pleaded complaint rule, however, Congress may ‘completely preempt’ a particular area of law such that any claim that falls within this area is ‘necessarily federal in character.’ ” Id. “Complete preemption” must be distinguished from “ordinary preemption.” Complete preemption is a jurisdictional doctrine, whereas ordinary preemption is merely a federal defense that does not create removal jurisdiction. See id.
*682 Absent diversity or some other independent basis for federal jurisdiction, a federal court has no jurisdiction to entertain a complaint removed from a state court that relies on state law ordinarily preempted by ERISA. Cf. Caterpillar Inc. v. Williams, 482 U.S. 386, 398, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (“The fact that a defendant might ultimately prove that a plaintiffs claims are pre-empted under the NLRA does not establish that they are removable to federal court.”); Goepel v. National Postal Mail Handlers Union, 36 F.3d 306, 316 (3d Cir.1994) (“ ‘State courts are competent to determine whether state law has been preempted by federal law,’ and, absent complete preemption, ‘they must be permitted to perform that function’ with regard to state law claims brought before them.”). As a result, such a complaint, if removed, must be returned to state court. The defendant’s remedy is to seek dismissal or summary judgment in the state court on the grounds of preemption.
If a claim based on state law is completely preempted, however, it is treated as a federal claim; a district court has federal question removal jurisdiction to entertain it, and the claim, after removal, should go forward in the district court as a federal claim. See International Brotherhood of Elec. Workers, 481 U.S. 851, 862-63, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (after finding complete preemption, considering the merits of plaintiffs suit “treated as a § 301 claim”); Antol v. Esposto, 100 F.3d 1111, 1114-15 (3d Cir.1996) (after determining that it had complete preemption removal jurisdiction, district court adjudicated claim on the merits); see also Pilot Life Ins. v. Dedeaux, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (complete preemption results from Congress’ intent that suits “be treated as federal questions governed ■ by § 502(a)”); Charles Alan Wright et al., Federal Practice and Procedure § 3722.1, at 511 (3d ed.1998) (explaining that complete preemption substitutes a federal cause of action for the preempted state cause of action).
Section 514(a) of ERISA broadly preempts “any and all State laws insofar as they relate to any employee benefit plan,” but this is ordinary preemption only, and does not create federal removal jurisdiction. Joyce, 126 F.3d at 171 (quoting 29 U.S.C. § 1144(a)). “Only state claims that come within ERISA’s civil enforcement provisions in § 502(a) are completely preempted such that removal to federal court is appropriate.” Id. State causes of action for wrongful discharge motivated by the desire to prevent a pension from vesting fall squarely within the ambit of § 510 and are ordinarily preempted by ERISA. See Ingersoll-Rand, 498 U.S. at 140, 142-45, 111 S.Ct. 478. Ordinary preemption under ERISA, without more, however, does not convert a state claim into one that is necessarily federal for jurisdictional purposes. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).
In Metropolitan Life, the Court did find that the civil enforcement provision in § 502(a)(1)(B) has complete preemptive power, but in doing so, it stated that:
[e]ven with a provision such as § 502(a)(1)(B) that lies at the heart of a statute with the unique preemptive force of ERISA, however, we would be reluctant to find that extraordinary preemptive power, such as has been found with respect to § 301 of the LMRA, that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.
Id. at 65, 107 S.Ct. 1542. The Court based its finding of complete preemption on strong evidence of Congressional intent, not merely to preempt state law, but to invoke the jurisdictional doctrine of complete preemption. In particular, the Court relied on the fact that “the language of the jurisdictional subsection of ERISA’s civil enforcement provisions closely parallels that of § 301 of the LMRA,” which the Court had already interpreted as giving rise to complete preemption at the time *683 that ERISA was drafted. Id. (citing 29 U.S.C. § 1132(f) and 29 U.S.C. § 185(a)). The Court also noted legislative history stating that:
[w]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan ... they may be brought not only in U.S. district courts but also in state courts of competent jurisdiction. All such actions ... are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.
Id. at 65-66, 107 S.Ct. 1542 (quoting H.R. Conf. Rep. No. 93-1280, p. 327 (1974)). The Court concluded that “[n]o more specific reference to the Avco rule can be expected and the rest of the legislative history consistently sets out this clear intention to make § 502(a)(1)(B) suits ... federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA.” Id. at 66, 107 S.Ct. 1542.
A similar analysis leads to the conclusion that § 510 standing alone does not have the “extraordinary” preemptive power that converts a state law claim into a federal one for jurisdictional purposes, and that therefore claims that seek, impermissible relief for a pension-defeating termination and thus fall within § 510 but not § 502(a) are not removable. The scope of the jurisdictional subsection on which Metropolitan Life relied for its finding of complete preemption is expressly defined in terms of the relief sought, rather than the nature of the cause of action. See 29 U.S.C. § 1132(f) (“The district courts ... shall have jurisdiction ... to grant the relief provided for in subsection (a) of this section in any action.”). Moreover, the House Report cited by Metropolitan Life expressly invokes the doctrine of complete preemption twice: “[w]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan,” H.R. Conf. Rep. No. 93-1280,1974 U.S.C.C.A.N. 5038, 1974 WL 11542, at 166, and “suit[s] to recover benefits denied contrary to the terms of [the] plan,” id. at 356-57. No such express reference to complete preemption appears in the discussion of the protection against pension-defeating discharge. See id. at 357. Thus neither the statute nor the legislative history provide any evidence of Congressional intent to expand the scope of ERISA’s complete preemptive power beyond those actions that fall within the civil enforcement provisions of § 502(a) to actions under § 510 that seek impermissible relief.
This Court’s precedent also supports the conclusion that claims seeking legal relief for violations of § 510 are only ordinarily preempted, and that federal jurisdiction is thus improper. This Court has recognized two prerequisites for a finding of complete preemption. “[Complete preemption applies only if ‘the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which plaintiffs state claim falls,’ ” and there must also be a “clear indication of a Congressional intention to permit removal despite the plaintiffs exclusive reliance on state law.” Goepel v. National Postal Mail Handlers Union, 36 F.3d 306, 311 (3d Cir.1994). Although ERISA provides a civil enforcement provision for violations of § 510, if Wood’s claims do not seek equitable relief, they do not fall “within the scope” of that provision. Furthermore, although there is clear evidence of Congressional intent to permit removal of actions within the scope of the civil enforcement provisions, which actions necessarily are potentially viable federal actions, there is no indication of Congressional intent to permit removal of actions that seek impermissible remedies and thus cannot be viable and must be dismissed.
The Supreme Court’s dicta in Ingersoll-Rand does not require a different result. Although Ingersollr-Rand was a case of ordinary preemption,[1] after determining *684 that § 502(a) provides the exclusive remedy for violations of § 510 the Court stated that “ ‘when it is clear or may fairly be assumed that the activities which a State purports to regulate are protected’ by § 510 of ERISA,’due regard for the federal enactment requires that state jurisdiction must yield.’ ” Id. (quoting Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 409 n. 8, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (a case of ordinary, rather than complete preemption)). Although the majority reads this statement as suggesting that § 510 itself has complete preemptive effect, to be consistent with Metropolitan Life this statement must be read in context, which is that Ingersollr-Rand was a case of ordinary preemption in which federal jurisdiction was not at issue. This context suggests that it is not state court jurisdiction that must yield when regulated activities fall within § 510, but rather the State’s jurisdiction to regulate such activities, that is, mere ordinary preemption. Indeed, the dicta at issue immediately follows and supports the Court’s holding that “the requirements of conflict pre-emption are satisfied in this case.” Id.
Contrary to the majority’s assertion, Metropolitan Life does not stand for the proposition that state law claims may fall within § 502(a) and be completely preempted even if the plaintiff asks only for relief that is not available under § 502(a). While it is true that the plaintiff there claimed “compensation for mental anguish caused by breach of ... contract” he also claimed “reimplementation of all benefits,” the paradigm of § 502(a) relief. Metropolitan Life Ins. Co., 481 U.S. at 61, 107 S.Ct. 1542. Accordingly, as the Court expressly pointed out, “General Motors and Metropolitan removed to federal court alleging federal question jurisdiction over the disability benefit claim by virtue of ERISA and pendant jurisdiction over the remaining claims.” Id. Thus, it was the claim for reinstatement of benefits that gave the Court jurisdiction to consider whether the state law claims seeking impermissible remedies were ordinarily preempted by ERISA.
The fact that the plaintiff seeks remedies in his state cause of action that are unavailable under the federal cause of action clearly does not preclude a finding of ordinary preemption; indeed, ordinary preemption of inconsistent state remedies is the very purpose of the ERISA’s limited civil actions provision and its broad ordinary preemption provision. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 51-54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (“The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.”). Ordinary preemption, however, is for state courts to determine.
II.
Given that § 510 does not by itself have complete preemptive effect, it becomes necessary to determine whether Wood’s claims fall within the civil enforcement provisions of § 502(a). Section 502(a) provides that:
A civil action may be brought—
(1) by a participant or beneficiary—
(B) to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provi *685 sions of this subchapter or the terms of the plan....
29 U.S.C. § 1132(a).
Section 510 of ERISA prohibits employers from discharging employees for the purpose of preventing a pension from vesting. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Section 510 provides that:
It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan .... The provisions of section 1132 of this title [§ 502 of ERISA] shall be applicable in the enforcement of this section.
29 U.S.C. § 1140. Claims under § 510 are enforced under § 502(a)(3). See Zipf v. American Tel. & Tel. Co., 799 F.2d 889, 891 (3d Cir.1986); see also Ingersoll-Rand, 498 U.S. at 143-44, 111 S.Ct. 478 (quoting only § 502(a)(3) and then stating that § 502(a) provides the remedy for violations of § 510). Since this is not a suit to recover benefits or to enforce rights under a plan, the only potential avenue for finding Wood’s state law claims are completely preempted is if they are claims under § 502(a)(3) to obtain “appropriate equitable relief to redress [a] violation[ ] of [§ 510].” 29 U.S.C. § 1132(a)(3).
In the instant case, it may well be that Wood’s state causes of action include a claim that falls within the ambit of § 510, in that they assert that Wood’s discharge was motivated by a desire to prevent his pension from vesting. I would conclude, however, that any such claim does not fall within § 502(a)(3), which reaches only claims for equitable relief. See 29 U.S.C. § 1132(a)(3); Mertens v. Hewitt Assocs., 508 U.S. 248, 255-62, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (holding that compensatory damages are unavailable under § 502(a)(3), which provides for equitable relief only); In re Unisys Corp. Retiree Med. Benefit “ERISA” Litig., 57 F.3d 1255, 1268-69 (3d Cir.1995); Spinelli v. Gaughan, 12 F.3d 853, 857 (9th Cir.1993) (recognizing that Mertens’ holding that damages are not available under § 502(a)(3) applies to § 510 claims).
Wood seeks solely money damages. To the extent that his claim falls within the scope of § 510, the damages claimed are to compensate him for injuries inflicted by tortious behavior — i.e., interference with a relationship that would ultimately have brought him pension benefits from a third party, the ERISA plan. Wood’s claim cannot be characterized as an equitable one for restitution because the money sought is not being wrongfully held by the employer. Nor can the damages sought accurately be characterized as incidental to or intertwined with injunctive relief (and thus equitable in nature) because no equitable relief is sought. Finally, a monetary award here cannot be viewed as an alternative to the equitable remedy of reinstatement (by analogy to a Title YII front pay award) both because Wood does not allege that reinstatement is unfeasible and, more importantly, because reinstatement would not result in his receiving pension benefits from the employer. What we have here, plain and simple, is a tort action seeking compensatory damages for interference with advantageous relations, and Wood is accordingly not seeking an equitable remedy. Case law from our court and the Supreme Court dictates, in my judgment, that we so hold.
In Teamsters v. Terry, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), union members sought damages against the union for breach of the duty of fair representation. The union insisted that the plaintiffs were seeking an equitable remedy and that they were not entitled to a jury trial. The Court concluded to the contrary, observing:
[Bjecause we conclude that the remedy respondents seek has none of the attributes that must be present before we will find an exception to the general rule and characterize damages as equitable, we *686 find that the remedy sought by respondents is legal.
First, we have characterized damages- as equitable where they are restitutionary, such as in “action[s] for disgorgement of improper profits,” Tull, 481 U.S. at 424, 107 S.Ct. 1831. See also Curtis v. Loether, supra, at 197, 94 S.Ct. 1005; Porter v. Warner Holding Co., 328 U.S. 395, 402, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). The backpay sought by respondents is not money wrongfully held by the Union, but wages and benefits they would have received from McLean [, the employer,] had the Union processed the employees’ grievances properly. Such relief is not restitutionary.
Second, a monetary award “incidental to or intertwined with injunctive relief’ may be equitable. Tull, supra, at 424, 107 S.Ct. 1831. See, e.g., Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 291-292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960) (District Court had power, incident to its injunctive powers, to award backpay in that case was restitutionary). Because respondents seek only money damages, this characteristic is clearly absent from the case.
Teamsters, 494 U.S. at 570-71, 110 S.Ct. 1339.
The Teamsters Court distinguished on a number of grounds the Title VII cases that characterize backpay awards as a form of “equitable relief.” First, the Court pointed out that Congress had specifically characterized backpay under Title VII as “equitable relief.” Id. at 572, 110 S.Ct. 1339. Second, and most important for present purposes, the Court noted that “backpay sought from an employer under Title VII would generally be restitutionary in nature ..., in contrast to the damages sought here from the Union” to compensate for income the plaintiff would have received from the employer had there been no breach of the duty of fair representation. Id.; see also Wooddell v. International Brotherhood of Elec. Workers, 502 U.S. 93, 97-98, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991) (holding in a suit by a union member against his union for discrimination in job referrals in the operation of its hiring hall that a “claim for lost wages cannot be treated as restitutionary ... as the damages sought are for pay for jobs to which the union failed to refer him”).
This Court followed a similar line of reasoning in Rickel v. Commissioner, 900 F.2d 655, 664 n. 16 (3d Cir.1990), where we explained that a restitutionary award representing wages earned but not paid is to be distinguished from an award compensating for the inability to earn an income from another source due to tortious interference.
There is one Third Circuit case that recognizes the availability of front pay in a Title VII case as- “an alternative to the traditional remedy of reinstatement” prior to the statutory amendment that made damages available under Title VII. See Goss v. Exxon Office Systems Co., 747 F.2d 885 (3d Cir.1984). Goss does not help Wood, however. As Goss and the ADEA cases (the ADEA has always authorized legal and equitable remedies) recognize, a front pay remedy is available only where reinstatement is not an available remedy. See, e.g., Maxfield v. Sinclair Intern., 766 F.2d 788 (3d Cir.1985). Moreover, unlike front pay, recovery on the claim here asserted would not be a substitute for a reinstatement remedy since reinstatement would not call for the defendant to pay Woods’ pension benefits.
Based on the foregoing, I conclude that the District Court had no jurisdiction over the claims made in the state complaint and should have remanded those claims to the state court, where Prudential may raise its preemption defense.

. The case had been decided in Texas state courts, and thus federal jurisdiction was not at issue. See Ingersoll-Rand, 498 U.S. at 135-37, 111 S.Ct. 478.